SANDERSON, Receiver, Plaintiff, *v.* BATEMAN, County Treasurer, Defendant.

(No. 6,078.)

(Submitted January 17, 1927. Decided February 4, 1927.)

[253 Pac. 1100.]

*Taxation—Delinquent Taxes—Release of Penalty and Interest —Statute—Unconstitutionality.*

Taxation—Delinquent Taxes—Penalties—Interest—Release or Diminution Prohibited by Constitution.
1.  A tax demand, lawfully levied and assessed (including penalty and interest charge imposed for failure to make timely payment) is a liability within the meaning of section 39, Article V of the state Constitution, prohibiting the legislature from releasing or in any way diminishing any obligation or liability held or owned by the state or any municipal corporation therein, and providing that such obligation or liability can be extinguished only by payment.

Same—Taxes Levied Against Persons, not Property.
2.  Taxes are levied against the person, not against the property, the owner being taxed because of his ownership, the property but serving as the basis for computing the measure of his liability and as security for the discharge of the lien which the tax imposes.

Same—Counties Governmental Agencies of State—Release of Penalties or Interest on Delinquent Taxes Unauthorized.
3.  While a county is not a municipal corporation and therefore does not fall within the prohibition of section 39, Article V of the Constitution, against legislative action authorizing the diminution or release, by the state or municipal corporation therein, of any obligation of liability owned by either, it is a governmental agency of the state and as such cannot do what the state is prohibited from doing.

---

2.  See 20 R. C. L. 135.

Constitution—Legislature cannot Do Indirectly What Prohibited from Doing Directly.

4.  The legislature in the enactment of laws cannot do indirectly what the Constitution prohibits it from doing directly.

Taxation—Release of Penalty and Interest on Delinquent Taxes—Statute—Invalidity.

5.  *Held,* on mandamus, that Chapter 63, Laws of 1923 (repealed by Chapter 77, Laws of 1925), permitting redemption of real property from tax sale upon payment of the original tax and interest thereon from date of sale, while the statutes under which the tax became delinquent provided for a penalty of ten per cent and interest at one per cent per month, was void as offending against the provision of section 39, Article V, of the Constitution forbidding the release or diminution of any obligation or liability due the state, and that therefore defendant county treasurer properly refused to permit redemption of lands on tender of the amount authorized by Chapter 63.

---

[1]  Taxation, 37 Cyc., p. 1542, n. 45; p. 1543, n. 50, 51.
[2]  Taxation, 37 Cyc., p. 707, n. 6; p. 788, n. 58.
[3]  Counties, 15 C. J., sec. 1, p. 388, n. 5; p. 389, n. 7; sec. 2, p. 392, n. 33.
[4]  Constitutional Law, 12 C. J., sec. 237, p. 805, n. 46.
[5]  Taxation, 37 Cyc., p. 1408, n. 67; p. 1409, n. 71; p. 1410, n. 78, 80.

Original proceeding by John A. Sanderson, Receiver of Commercial National Bank of Miles City, against Joseph Bateman, as Treasurer of Custer County, for a writ of mandate commanding him to permit redemption of lands described in plaintiff's complaint.  Proceeding dismissed.

*Messrs. Loud & Leavitt,* for Plaintiff, submitted an original and a reply brief; *Mr. Charles H. Loud* argued the cause orally.

The constitutionality of Chapter 63, Laws of 1923, depends upon: 1. Whether or not taxes are included in the word "obligation" as used in section 39 of Article V of the Constitution as hereinbefore set out; 2. And if so, does interest and penalty constitute a part of such "obligation."

Are taxes included in the word "obligation" as used in section 39 of Article V of the Constitution? It was held in *Board*

---

4.  See 6 R. C. L. 78.

*of County Commrs.* v. *Story,* 26 Mont. 517, 69 Pac. 56, that the obligation to pay a tax demand levied and assessed by the proper authorities and in accordance with legislative directions is a "liability created by statute." We must therefore concede under the authority of this case that an ordinary tax demand will fall within and be included within the word "obligation" as used in section 39 of Article V of the Constitution. Notwithstanding, we are firmly convinced that the framers of the Constitution never had any such intention in mind. It seems far more reasonable to believe that by the use of the words "obligation or liability" the framers had in mind state, county or municipal warrants or bonds or such securities which are readily exchanged or transferred.

In the making of this concession as above, we do not want to be considered as at all conceding that the tax obligation involved in this case is at all similar with that considered in the *Story Case.* In the *Story Case,* taxes had been levied and assessed against property on the Crow Indian Reservation belonging to white men, and because the county officials were unable to collect these taxes by distraint and sale of the property, an action was brought in the district court for their collection, and this demand for taxes was held to be a liability created by statute. Here, we have an entirely different state of facts which we believe clearly distinguishes the demands or "obligations" involved in these two cases; here there was not only a levy and an assessment, which we concede was properly made, but in addition thereto, upon default in the payment of the taxes, a sale of the property upon which the taxes had been levied was made to the county and a certificate of sale issued to it. It is our contention that the sale of the property for taxes to the county has entirely changed the original obligation if it has not entirely discharged the same.

Cooley, in his work on Taxation, third edition, volume 1, pages 17 to 21, in considering the nature of taxes, says: "Taxes

are not debts. Taxes are not contracts between party and party either express or implied but they are positive acts of the government through its various agents, binding upon its inhabitants, and to the making and enforcing of which their personal consent is not required. They do not draw interest as do sums of money owing upon contract." It has been held that the purchase by the state of property sold for delinquent taxes will extinguish the debt or obligation and all liens arising from these taxes. (Black on Tax Title, 2d ed., sec. 30; *Bradford* v. *Lafargue,* 30 La. Ann. 432.)

It is our contention that when property has been sold to the county for taxes the county becomes the owner of the property or has an inchoate or qualified ownership of the property subject to the right of redemption. If this contention is sound in law, then it is apparent that neither the state of Montana or the county of Custer, since the sale of the property, held, or now holds, any obligation or liability of any person or corporation within the meaning of section 39 of Article V of the Constitution; and it also follows that Chapter 63 of the Session Laws of 1923 cannot be held to be in violation of this constitutional provision.

If taxes are included in the word "obligation" as used in section 39 of Article V of the Constitution, does either interest or penalty, or both, constitute a part of the obligation? Taxes do not, in the absence of statutes so providing, draw interest either from the time of assessment or from the time they become delinquent. (*State* v. *Baldwin,* 62 Minn. 518, 65 N. W. 80; *Sargent* v. *Tuttle,* 67 Conn. 162, 32 L. R. A. 822, 34 Atl. 1028; *Central Trust Co.* v. *New York C. & N. R. Co.,* 110 N. Y. 250, 1 L. R. A. 260, 18 N. E. 92; *State* v. *New England Furniture & Carpet Co.,* 107 Minn. 52, 16 Ann. Cas. 470, 119 N. W. 427; 29 R. C. L. 386; *State* v. *New York Mut. L. Ins. Co.,* 175 Ind. 59, 42 L. R. A. (n. s.) 256, 93 N. E. 213; *Rochester* v.

*Bloss,* 185 N. Y. 42, 7 Ann. Cas. 15, 6 L. R. A. (n. s.) 694,
and note, 77 N. E. 794.)

It is generally considered that a tax is not a debt. (26
R. C. L., Taxation, sec. 11, p. 925.)  The power of taxation is
inherent in a sovereign state.  The right to tax is not granted
by the Constitution but of necessity underlies it, because gov-
ernments could not exist or perform its functions without it.
While it may be regulated and limited by the Constitution, it
exists without express authority in the fundamental law as a
necessary attribute of sovereignty.  The provisions of the Con-
stitution which relate to the power of taxation do not operate
as grants of the power of taxation to the government thus set
up, but constitute limitations upon a power which would other-
wise be without limit.  (*Id.,* p. 26.)  In this same text-book it
is held: "In the absence of a (constitutional) provision it is
universally recognized that upon the customary division of gov-
ernmental powers into three classes, namely, legislative, execu-
tive and judicial, the power of taxation is legislative and falls
to the legislature without special assignment."  (26 R. C. L.,
p. 27.)

As a tax is not, strictly speaking, a "debt" but a mere
statutory imposition, it has been held that general interest
statutes, *i. e.,* statutes providing for interest on debts, *etc.,* do
not apply to taxes.  (*Perry* v. *Washburn,* 20 Cal. 350; *Louis-
ville & N. R. Co.* v. *Commonwealth,* 89 Ky. 531, 12 S. W. 1064;
·*Commonwealth* v. *Louisville etc. R. Co.* (Ky.), 104 S. W. 267;
*Augusta* v. *North,* 57 Me. 392, 2 Am. Rep. 55; *Illinois Cent.
R. Co.* v. *Adams,* 78 Miss. 895, 29 South. 996; *Camden* v. *Allen,*
26 N. J. L. 398; *Shaw* v. *Pickett,* 26 Vt. 482; *Power* v. *City of
Detroit,* 139 Mich. 30, 5 Ann. Cas. 645, 102 N. W. 288; 5 Am.
& Eng. Ann. Cas. 645.)

Montana, like many of the other states, has a statute declar-
ing every tax has the effect of a judgment.  (Sec. 2152, Rev.
Codes 1921.)  Such statutory provisions declaring that every

tax shall have the effect of a judgment have been construed not to impose interest on taxes, although by statute judgments bear interest. (*People* v. *Central Pac. R. Co.,* 105 Cal. 576, 38 Pac. 905; *Rochester* v. *Bloss,* 185 N. Y. 42, 7 Ann. Cas. 15, 6 L. R. A. (n. s.) 694, 77 N. E. 794.) In the last case the court said: "A tax-roll is not a judgment-roll, and a tax thereon does not partake of the nature of a judgment, except as to its validity and amount and the manner in which it can be proven." (*Illinois Cent. R. Co.* v. *Adams,* 78 Miss. 895, 29 South. 996.)

The word "penalty" has been defined as a sum of money which the law exacts the payment of by way of punishment for doing some act which is prohibited or omitting to do some act which is required to be done. (*People ex rel. Kane* v. *Sloan,* 98 App. Div. 450, 90 N. Y. Supp. 762, 763; *United States* v. *Four Hundred and Twenty Dollars,* 162 Fed. 803, 805.)

It is apparent to us that interest and penalty have been added by the legislature to the taxes or original obligation as a punishment for the nonpayment thereof and under the belief that such additional demands will tend to secure the prompt payment of taxes. If interest and penalty upon delinquent taxes cannot be enforced in the absence of a statute authorizing their collection, it follows that the legislature may by a subsequent amendatory act take away the right which it had previously created.

The repeal of a tax law puts an end to all right to proceed to a levy of taxes under it, even in cases already commenced, unless the right is reserved in the repealing statute; and statutory remedies for the enforcement of a tax are gone when the statute is repealed without an express saving. (1 Cooley on Taxation, 3d ed., p. 21.) The same rule is also announced under the head of "Taxation" in Cyc., under the subhead of "Interest and Penalties," as follows: "The constitutionality

of such an enactment is no longer denied, but the repeal of a statute imposing such a penalty works a remission of the penalty and it cannot be collected after the repeal." (37 Cyc. 1410; *Snell* v. *Campbell*, 24 Fed. 880; *Collier* v. *Shaffer*, 137 Cal. 319, 70 Pac. 177; *Cavanagh* v. *Shaver*, 56 Cal. App. 758, 207 Pac. 275.)

Section 96 of the Revised Codes of Montana of 1921 provides: "No Act or part of an Act repealed by another Act of the legislative assembly is revived by the repeal of the repealing Act without express words regarding such repealed Act or part of an Act."

. Upon the reasons herein advanced and the authorities cited we confidently assert that neither interest nor penalty constitute a part of the original obligation of a person to pay taxes, and this constitutes an added reason for the claim that Chapter 63 of the Session Laws of 1923 is not in violation of the provisions of section 39 of Article V of the Constitution.

Assuming that Chapter 63 of the Session Laws of 1923 was a valid enactment, it repealed all Acts and parts of Acts in conflict therewith, so that from and after its passage and approval the provision of our Code, section 2210 of the Revised Codes of 1921, providing a penalty of ten per cent and interest at the rate of one per cent per month upon delinquent taxes, was repealed and in lieu thereof a provision for the payment of the original tax, plus seven per cent interest from the date of the sale, was substituted therefor. This provision of the law of 1923 was in full force and effect until Chapter 63 of the Session Laws of 1923 was in turn repealed by Chapter 77 of the Session Laws of the Nineteenth Legislative Assembly of 1925, which last Act went into effect on July 1, 1925; so that from March 1, 1923, until July 1, 1925, the law of this state provided no penalty upon delinquent taxes when the property had been sold to the county and no assignment of the certificate had been made, but did provide for the payment of

78 Mont.—16

interest at the rate of seven per cent from the date of sale upon the original tax.

By an examination of the Act of 1925 repealing Chapter 63 of the Session Laws of 1923 no rights were reserved by any waiving clause; so that in all cases where property is sought to be redeemed from a sale made to the county for taxes for the years 1920, 1921 and 1922 the owner or his successor in interest is only required to pay the original tax without penalty or interest. But as to the delinquent taxes for the subsequent years of 1923, 1924, 1925 and 1926, a penalty of ten per cent and interest at the rate of one per cent per month is provided by Chapter 96 of the Session Laws of 1923. Chapter 63 of the Session Laws of 1923 only provided for redemption when there had been a sale of property for taxes to the county and where the county still retained the certificate.

Upon this state of the law it is our contention that we are entitled to redeem the property described in our complaint from the sale for taxes for the year of 1920 upon the payment of the original tax as levied for that year, and upon the payment of the original tax levied upon this property for the years 1921 and 1922 and the payment of the taxes of 1923, 1924, 1925 and 1926, together with the penalty and interest as provided by law, all in accordance with the tender made by plaintiff to and refused by the defendant county treasurer.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, submitted an original brief, and one in answer to the plaintiff's reply brief; also one in reply to that filed by *Mr. Sterling M. Wood, Amicus Curiae; Mr. Angstman* argued the cause orally.

The repeal of Chapter 63, Laws of 1923, by Chapter 77 of the Laws of 1925 restores former statutory provisions (secs. 2175, 2188 and 2221, Rev. Codes 1921), relating to penalties and interest on delinquent taxes. It is our contention that no

part of the above sections was repealed by Chapter 63 and
that the cases withdrawn from their operation by that Chapter
were restored by the enactment of Chapter 77. (*Smith* v.
*Hoyt*, 14 Wis. 252; *State* v. *Sawell*, 107 Wis. 300, 83 N. W.
296; *State* v. *Mines*, 38 W. Va. 125, 18 S. E. 470; *Brown* v.
*Barry*, 3 Dall. (U. S.) 365, 1 L. Ed. 638; *Dykstra* v. *Holden*
151 Mich. 289, 115 N. W. 74; *State* v. *Prather*, 84 Kan. 169, 36
L. R. A. (n. s.) 1084, 12 Pac. 829; *Ex parte Williamson*, 116
Wash. 560, 200 Pac. 329; *Pepin Tp.* v. *Sage*, 129 Fed. 657, 64
C. C. A. 169; *Faucette* v. *Paterson*, 140 Ark. 628, 216 S. W.
300; 25 R. C. L. 934.)

Chapter 63 was of doubtful validity. It is questionable
whether the legislature had authority to pass it, in view of
section 39, Article V, of the Constitution. This court in the
case of *Board of County Commrs.* v. *Story*, 26 Mont. 517, 69
Pac. 56, held that demand for taxes is a liability. This de-
cision is in harmony with the decisions of other courts in states
having constitutional provisions similar to our section 39. (See
*Louisville* v. *Louisville Ry. Co.*, 111 Ky. 1, 63 S. W. 14; *City
Item Co-op. Printing Co.* v. *New Orleans*, 51 La. 713, 25 South.
313; *Board of Supervisors of Madison Co.* v. *Smith*, 95 Ill. 328;
*Mix* v. *People*, 116 Ill. 265, 4 N. E. 783; *Agnew* v. *Brall*, 124
Ill. 312, 16 N. E. 230; *State* v. *Graham*, 17 Neb. 43, 22 N. W.
114; *State* v. *Hannibal etc. Co.*, 75 Mo. 208; *Ollivier* v. *City of
Houston*, 93 Tex. 201, 54 S. W. 940, 943; *State* v. *Central Pac.
Ry. Co.*, 9 Nev. 79.)

Prior to the decision of this court in *State ex rel. City of
Wolf Point* v. *McFarlan*, ante, p. 156, 252 Pac. 805, we are free
to confess that we had considerable doubt whether penalties
and interest on delinquent taxes were a part of the obligation
referred to in section 39, above. However, in that decision
it was held that the penalty and interest belongs to the political
subdivision entitled to the taxes. Hence it follows that it is a
part of the obligation. Since a part of the obligation belongs

to the state, therefore a part of the penalty and a part of the interest also belongs to the state.

Plaintiff contends that by the sale of the property the "obligation or liability" of the taxpayer was discharged and in lieu thereof was substituted the inchoate or qualified ownership of the property. This in a sense may be true, but the moment the taxpayer chooses to exercise the right of redemption, the "obligation or liability" is revived. The rights of the parties become fixed under the law existing at the time the taxes were allowed to go delinquent.

The framers of our Constitution intended that there should be no discrimination between taxpayers. Chapter 63 was in conflict with the letter and spirit of the Constitution and amounts to a denial of the equal protection of the laws under the federal Constitution. (*Ollivier* v. *City of Houston,* 93 Tex. 201, 54 S. W. 940, 943.)

Chapter 63 offended against section 26, Article V of the Constitution, (a) prohibiting special laws remitting penalties; (b) prohibiting special legislation "extending the time for the collection of taxes." The effect of the Chapter was to extend the time for the payment of the taxes of the special class of persons sought to be benefited by it. (c) Section 26 also prohibits special legislation "relinquishing or extinguishing in whole or in part the indebtedness, liability or obligation" of any corporation, *etc.* If penalty and interest under the facts disclosed in the record do not constitute an "obligation or liability," they certainly amount to an "indebtedness" within the meaning of section 39, Article V. The section also prohibits special legislation authorizing the impairing of liens. The county holds a lien upon property, not only for taxes but for penalty and interest. When a person is permitted to redeem without paying the penalty and part of the interest, it would seem that this is equivalent to impairing the lien of the county.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is a proceeding commenced originally in this court by the plaintiff as receiver of the Commercial National Bank of Miles City against the treasurer of Custer county to obtain a writ of mandate commanding him to permit the redemption of the lands described in plaintiff's complaint.

Omitting formal allegations, the complaint shows the receiver to be the holder of title to the lands derived through mortgage foreclosure proceedings. Plaintiff's predecessor in interest, while owner of the lands, permitted the taxes levied and assessed thereon for the year 1920, to become delinquent, and in 1921 the lands were sold for the taxes. Upon the sale Custer county became the purchaser and received a certificate of tax sale therefor. No assignment of the certificate of sale has been made by Custer county which is now the owner and holder thereof. Plaintiff's predecessor permitted the taxes levied and assessed against the lands for the years 1921, 1922, 1923, 1924 and 1925 to become delinquent, and the treasurer duly noted the delinquencies upon the proper records of his office. The lands were held by the county for the delinquent taxes of the subsequent years under its certificate of sale issued for the 1920 taxes.

Prior to the date of filing the complaint the plaintiff receiver tendered to the treasurer the amount of the original tax levied and assessed upon the lands for the years 1920, 1921 and 1922, and also an amount sufficient to pay the delinquent taxes with interest and legal charges for the years 1923, 1924, 1925 and 1926. It is alleged that the treasurer wrongfully and unlawfully refused to accept the tender and refused to permit the plaintiff to redeem the lands from the delinquent tax sale unless plaintiff would pay to the treasurer ten per cent "penalty," publication charges, and interest at the rate of one

per cent per month, upon the 1920, 1921 and 1922 taxes, respectively. The complaint then sets out the provisions of Chapter 63 of the Session Laws of the Eighteenth Legislative Assembly, and it is alleged that this Chapter continued in force until 1925 when it was repealed by Chapter 77 of the Session Laws of the Nineteenth Legislative Assembly, which also is set out in the complaint. The complaint contains adequate allegations setting forth the reasons for asking leave to bring this action as an original proceeding in this court. The defendant has appeared and filed a general demurrer to the complaint. The case has been argued ably by counsel for plaintiff and defendant as well as by *amicus curiae*.

In 1920 the law required the county treasurer, within ten days after the receipt of the duplicate assessment-book from the county clerk (sec. 2161, Rev. Codes 1921), to publish a notice specifying that taxes would be delinquent on the thirtieth day of November next thereafter at 6 o'clock P. M., and that unless paid prior thereto ten per cent would be added to the amount thereof. (Chap. 15, Sess. Laws 1917, p. 15, afterward sec. 2169, Rev. Codes 1921.) (For convenience the sections of the Revised Codes of 1921 are used unless otherwise specified, rather than the corresponding sections of the Revised Codes of 1907, the sections being identical except as to numbers.)

Section 2175, Revised Codes of 1921, provided: "On the thirtieth day of November of each year, at six o'clock P. M., all unpaid taxes are delinquent, and thereafter the county treasurer must collect, for the use of the county, an addition of ten per cent." On the third Monday of December the treasurer was required to make settlement with the county clerk and to deliver to him "a complete delinquent list of all persons and property then owing taxes." (Secs. 2176–2179, Rev. Codes 1921.) After settlement with the county treasurer the county clerk was required to charge him "with the amount of taxes due on the delinquent list, with the ten per cent added

thereto, and within three days thereafter deliver the list, duly certified, to the county treasurer." (Sec. 2180, Rev. Codes 1921.) The treasurer was then required to publish the delinquent tax list with a notice that unless the taxes delinquent, together with the costs and percentage be paid, the real property would be sold at public auction. (Secs. 2182, 2183, Rev. Codes 1921.)

Section 2188, Revised Codes of 1921, provided: "The county treasurer must collect, in addition to the taxes due on the delinquent list and ten per centum added thereto, fifty cents on each lot, piece, or tract of land separately assessed, and on each assessment of personal property, which must be paid to the county to pay the cost of such publication."

At the sale if no purchaser in good faith appeared (sec. 2191, Rev. Codes 1921), the county treasurer was required to strike off the property to the county as the purchaser and to file "the duplicate certificate of sale" in his office, in which case he made an entry "sold to the county" on the duplicate assessment-book opposite the tax, and thereupon he was entitled to be "credited with the amount thereof in the settlement." The duplicate certificate of sale referred to in section 2191 is provided for in section 2194, Revised Codes of 1921.

Section 2207, Revised Codes of 1921, enacted as section 1 of Chapter 151, Laws of 1917, provides: "At any time after any parcel of land has been bid in by the county as the purchaser thereof for taxes, as provided in section 2191, the same not having been redeemed, the county treasurer shall assign all the right of the county therein, acquired at such sale, to any person who shall pay the amount for which the same was bid in, with interest thereon at the rate of one per cent per month, and the amount of all subsequent delinquent taxes, penalties, costs, and interest, as provided by law, upon the same from time to time when such tax became delinquent.  *  *  *  "

Interest at the rate of one per cent per month must be collected on such delinquent taxes from the time they were first delinquent until paid. (Sec. 2221.) In case property sold for taxes is purchased by the county, pursuant to section 2191, *supra,* it must be assessed the next year for taxes in the same manner as if it had not been so purchased. (Sec. 2231.) Property sold for taxes is subject to redemption (sec. 2210), but in case it is sold to the county and is subsequently assessed pursuant to section 2231, ''no person must be permitted to redeem such property except upon the payment of the amount of the subsequent assessment, costs, fees and interest.'' (Sec. 2233, Rev. Codes 1921.)

Section 2234 provides in part: ''Whenever property sold to the county, pursuant to the provisions of this chapter, is redeemed as herein provided, the moneys received on account of such redemption must be distributed as follows: The original tax and twenty per cent paid in redemption must be apportioned between the state and county, in the same proportion that the state tax bears to the county tax, and the balance must be paid to the county.''

It would seem clear from the foregoing sections that when the lands of plaintiff's predecessor in interest were struck off to the county for the 1920 taxes, the owner was then liable to pay the taxes due upon November 30 of that year prior to 6 o'clock P. M., and ten per cent in addition thereto, the costs allowed by statute, and interest at the rate of one per cent per annum from the time the tax was first delinquent.

When the owner did not pay the taxes assessed for 1921 prior to 6 o'clock P. M. of November 30, the taxes became delinquent and a ten per cent addition was made thereto. (Sec. 2175, *supra.*) Interest began to run upon the delinquent tax from that date at one per cent per month. The same is true of the 1922 taxes. For these amounts the property was liable.

[78 Mont. 235.]

In *Hilger* v. *Moore*, 56 Mont. 146, 182 Pac. 477, this court [1–5] said: "Speaking strictly, there is but one subject of taxation—persons, natural and artificial. All taxes are levied against the person, not against property. It is the owner who is taxed because of his ownership, and his property but serves as the basis for computing the measure of his liability and as security for the discharge of the lien which the tax imposes." (*State* v. *Camp Sing*, 18 Mont. 128, 56 Am. St. Rep. 551, 32 L. R. A. 635, 44 Pac. 516.)

In order to redeem the property from tax sale the owner, or his successor in interest, had to pay the amount of the taxes, additions, interest and costs. This was the situation when the Eighteenth Legislative Assembly enacted Chapter 63, Session Laws of 1923, page 135. Section 1 of that Act reads as follows: "That from and after the passage and approval of this Act, any person having an interest in real estate heretofore sold for taxes to any county or which has been struck off to such county when the property was offered for sale, and no assignment of the certificate of such tax sale has been made by the county making such sale, shall be permitted to redeem the same by paying the original tax plus seven per cent interest from the date of sale."

Section 2: "All Acts and parts of Acts in conflict herewith are hereby repealed."

This Act was repealed by Chapter 77, Session Laws of 1925, page 102.

Much effort has been expended by counsel touching the effect of Chapter 63 upon prior conflicting statutes, and the repeal of that chapter by Chapter 77, *supra;* and as to the effect of Chapter 96, Session Laws of 1923, page 257, amending sections 2161, 2163, 2169, 2176, 2180, 2182 and other sections, and repealing 2175, 2183 and 2188, Revised Codes of 1921. These questions we should consider if it were not for the inescapable force of section 39 of Article V of the Constitution of Montana,

which controls the result of this case. "No obligation or lia-
bility of any person, association or corporation, held or owned
by the state, or any municipal corporation therein, shall ever be
exchanged, transferred, remitted, released or postponed, or in
any way diminished by the legislative assembly; nor shall such
liability or obligation be extinguished, except by the payment
thereof into the proper treasury."

In *Ollivier* v. *City of Houston,* 93 Tex. 201, 54 S. W. 940,
wherein a somewhat similar constitutional provision was under
consideration, we find expressions which are appropriate here:
"The Constitution of itself furnishes many evidences of the
earnest purpose of the framers to render impossible every form
of governmental favoritism,—the granting of special privileges,
or bestowal of favors. The lightening of the public burdens of
one citizen at the expense of the others is contrary both to its
spirit and its letter. So it is declared that taxation shall be
equal and uniform; but the force of this provision would be
defeated if the power remained to relinquish at will the lia-
bility thus justly and fairly fixed. For the prevention of these
evils this provision was inserted. Its terms are broad enough
to cover any conceivable obligation or liability, the remission
of which would diminish the public revenue and thereby either
directly or indirectly impose a heavier burden upon those not
affected by the exemption."

That a tax demand lawfully levied and assessed by the
proper authorities is a liability within the meaning of section
39, *supra,* was held directly in *Board of County Commrs. of
Custer County* v. *Story,* 26 Mont. 517, 69 Pac. 56, and this
holding is supported by the overwhelming weight of authority.

As was said in the *Story Case,* the "power to tax is strictly
legislative, and its exercise must ensue from the mandate of
the law-making branch of the government in the establishment
of fixed and general rules insuring, as near as may be, exact

impartiality and equality in the distribution of the common burden. The process by which this exaction from the individual or the estate is accomplished is the product of statutory enactment."

It is within the legislative prerogative to direct the exaction of an addition to the tax if the taxpayer does not discharge the burden imposed within the time required, as well as interest upon the delinquent tax. (See Cooley on Taxation, 4th ed., secs. 1273–1275.) Whether the addition is to be regarded as a penalty designed to punish the taxpayer for his delinquency or as damages for deferred payment, it is a liability within the meaning of the Constitution, and the same is true, of course, of interest which has accrued.

It was beyond the power of the legislative assembly to remit, release or diminish in any way the liabilities based upon taxes regularly assessed and levied in 1920 and the succeeding years. (*Ollivier* v. *City of Houston, supra; County of Lancaster* v. *Trimble*, 33 Neb. 121, 49 N. W. 938; *City of Louisville* v. *Louisville Ry. Co.*, 111 Ky. 1, 98 Am. St. Rep. 387, 63 S. W. 14; *Ludlow* v. *City of Ludlow*, 152 Ky. 545, 153 S. W. 783; *Ice Co.* v. *Adams*, 75 Miss. 410, 22 South. 944.)

"In effect the Constitution guarantees to every property owner in the state that his property shall be liable for the just proportion of taxes due thereon according to the valuation as ascertained by law, and for no more. It deprives the legislature of the power to add to this amount, or to discriminate between taxpayers in any manner or form." (*State* v. *Graham*, 17 Neb. 43, 22 N. W. 114.)

"The idea of taxation imports the equality of apportionment and assessment of all property. * * * And it cannot be doubted that the exemption of the property of an individual or of a private corporation from taxation, either in whole or in part, casts an unusual and inequitable burden on the prop-

erty of those who have not been thus graciously favored."
(*State* v. *Hannibal-St. Joseph Railroad Co.,* 75 Mo. 208.)

The addition, or penalty, if one chooses to call it that, and
the interest charges imposed upon the lands of plaintiff for the
years 1920, 1921 and 1922 were liabilities due from the delin-
quent, and under the Constitution the legislature was as much
without authority to relieve the delinquent taxpayer of addi-
tion or interest, or portion of either, as it would have been to
remit the tax itself. (*Louisville Car, Wheel & Ry. Supply Co.*
v. *City of Louisville,* 146 Ky. 573, 142 S. W. 1043.)

But it is argued that Chapter 63 had reference only to re-
demptions from tax sales; that when the property was struck
off to the county the lien of the statute (sec. 2152, Rev. Codes
1921) was satisfied and the taxes were paid, saving to the
owner the right to redeem. The statute undertook to permit
him to redeem "by paying the original tax plus seven per
cent interest from the date of sale." It thus undertook to
remit the addition of ten per cent and the interest which had
accrued after delinquency and prior to the tax sale. It un-
dertook to release the redemptioner from a portion of his lia-
bility, to diminish his obligation to that extent. No matter
how pure may be the motive which impels the purpose, the
legislative assembly is powerless to extend any such privilege
to the taxpayer. The law-making power cannot do indirectly
what the Constitution prohibits it from doing directly. (*State*
v. *Graham, supra; County of Lancaster* v. *Trimble, supra;
Ollivier* v. *City of Houston, supra.*)

Also, the Act upon its very face discriminates in favor of
one who, although unable to prevent delinquency by payment,
was fortunate enough to have his property struck off at tax
sale to the county as against another whose property at the
same time was struck off to a citizen; the latter to effect a re-
demption must pay the original tax, addition, interest and

costs; or if the county has assigned its certificate of sale to a citizen, the redemptioner must assume and discharge a like burden.

But it is said the constitutional provision does not include a county within its inhibitory language. It does not in express words. A county, this court has said, is not a municipal corporation. (*Hersey* v. *Neilson,* 47 Mont. 132, Ann. Cas. 1914C, 963, 131 Pac. 30; *Bignell* v. *Cummins,* 69 Mont. 294, 36 A. L. R. 634, 222 Pac. 797.) But in the opinions in those cases it was pointed out that "a county is a governmental agency or political subdivision of the state, organized for purposes of exercising some functions of the state government." (*County of San Mateo* v. *Coburn,* 130 Cal. 631, 63 Pac. 78.) "It is merely a political agent of the state, created by law for governmental purposes, and is charged with the performance of certain duties for and on behalf of the state." (*Yamhill County* v. *Foster,* 53 Or. 124, 99 Pac. 286.) The county is a creature of the state; the state made it and can unmake it.

Among the county's duties, as an arm of the sovereignty, is the collection of the state's share of *ad valorem* taxes. The state was entitled to a share in the original taxes due from plaintiff's predecessor in the years 1920, 1921 and 1922, and the interest thereon (as to the ten per cent addition we express no opinion). The state could not remit, release nor diminish those taxes directly or indirectly, and what the Constitution prohibits the state from doing it cannot authorize its creature, the county, to do. The manifest intent of section 39 of Article V is to prohibit the county, a political subdivision of the state for governmental purposes, from doing the things forbidden when the state cannot do them.

Beyond a doubt Chapter 63 transgressed the commandment of section 39 of Article V of the Constitution and the Act was

void. It follows that the county treasurer was right in refusing to accept the tender made.

The demurrer is sustained and the proceeding is dismissed.

*Dismissed.*

ASSOCIATE JUSTICES M_ERS, STARK, MATTHEWS and GALEN concur.

Rehearing denied February 16, 1927.