YELLOWSTONE PACKING & PROVISION CO., APPEL-
LANT, *v.* HAYS, COUNTY TREASURER, RESPONDENT.

(No. 6,282.)

(Submitted June 5, 1928.   Decided June 28, 1928.)

[268 Pac. 555.]

*Messrs. Stewart & Brown* and *Mr. F. W. Mettler,* for Appellant, submitted a brief; *Mr. John G. Brown* and *Mr. Mettler* argued the cause orally.

4

*Mr. M. J. Lamb,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

This is a suit in equity instituted by the plaintiff to enjoin the county treasurer of Yellowstone county from issuing a tax deed upon the sale of its property for delinquent taxes; to oblige the treasurer to accept a less amount than was levied and delinquent, in compromise and discharge of such taxes, and to compel the issuance of a certificate of redemption of plaintiff's property from sale. Upon issues joined by answer to the complaint, and a reply thereto, the cause was regularly brought on for trial before the court without a jury. After the conclusion of all of the evidence introduced by the parties, the court sustained the defendant's motion to dismiss the

plaintiff's complaint. Judgment was entered accordingly, and the plaintiff has appealed.

The several assignments of error present but one question determinative of the controversy, viz., Did the court err in so entering judgment?

It appears that the plaintiff's property, both real and personal, while in the possession and ownership of its predecessor in interest, had become delinquent for taxes levied thereon for the years 1921, 1922, 1923 and 1924, amounting in the aggregate, with penalties, interest and costs, to $18,125.52. On August 11, 1925, the board of county commissioners of Yellowstone county attempted by resolution, regularly passed and adopted, to compromise the amount of such delinquent taxes upon payment by the plaintiff of the sum of $6,777.67, and ordered the county treasurer to receive and accept such sum in full settlement and discharge of the entire amount shown to be due. The county treasurer refused to obey the order, taking the position that it was in excess of the board's jurisdiction. Theretofore the real estate had been sold for delinquent taxes, and the county treasurer gave notice that on October 15, 1926, he would issue a tax deed, resulting in the institution of this action on October 14, 1926.

There is no contention made by the plaintiff that any actual fraud was perpetrated by the taxing officers, or that an erroneous principle was applied in making the assessment and levying the tax. No objection was made to the assessor respecting the valuations fixed, nor to the county or state board of equalization, and the taxes so levied for the years 1921, 1922, 1923 and 1924 have not been paid, although taxes levied based on a similar assessment for the years 1918, 1919 and 1920 were paid without question.

J. B. Henderson was an officer of the Yellowstone Packing Company, the corporation which owned the property during the period of time from 1918 to 1924, inclusive, and is now the president of its successor in interest, the Yellowstone Packing & Provision Company. In connection with the reorganization

of the business of the Yellowstone Packing Company, after its failure, he, as an officer and representative of the Yellowstone Packing & Provision Company, which latter corporation was organized to take over the property, discovered for the first time that the property was assessed at a higher valuation than other like property in the vicinity owned by other parties, resulting in the plaintiff applying to the board of county commissioners for a compromise of the delinquent taxes and the board's order above noted.

Was the order of the board of county commissioners valid? Plaintiff's entire argument is predicated upon the validity of the board's order, based upon the power of the board to compromise delinquent taxes on property under the provisions of section 2222, Revised Codes 1921, which reads as follows: "Any taxes, per centum, and costs paid more than once or erroneously or illegally collected, may, by order of the board of county commissioners, be refunded by the county treasurer, and the state's portion of such tax, percentage, and costs must be refunded to the county, and the state auditor must draw his warrant therefor in favor of the county."

In construing this statute, this court has said that "taxes paid more than once, or erroneously or illegally collected, may be refunded; but these provisions and others of like import are intended to secure the collection of lawful revenue and to protect the owner whose property is made to bear more than its just proportion of the burden of taxation, and were not enacted to secure immunity from taxation to anyone." (*Anaconda Min. Co.* v. *Ravalli County,* 52 Mont. 422, 158 Pac. 682.)

The language employed in the statute appears to be plain and without any ambiguity; therefore it must be construed and applied in accordance with its apparent meaning. It speaks for itself, and by it the board of county commissioners of a county is permitted to refund only such taxes as *have been* "paid more than once, or erroneously or illegally *collected."* It should be manifest that the board is not empowered to remit

taxes which have not been paid, and that no attempt was thereby made to clothe the board with authority to compromise delinquent taxes. Furthermore, no such authority could be conferred on the board by the lawmakers in view of the restrictions contained in section 39 of Article V of our Constitution. It is there provided that: "No obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislative assembly; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury." The legislature having no such power, it is plain that it could not by enactment confer the same on boards of county commissioners. (*Sanderson* v. *Bateman,* 78 Mont. 235, 253 Pac. 1100.)

However, excessive valuations for taxation may be reduced in ██ ██ advance of payment of the taxes imposed, by the county board of equalization, as hereinabove noted. A county is a political subdivision of the state for governmental purposes, and as such is subject to legislative control, except in so far as restricted by the Constitution in express terms or by necessary implication. (*Hersey* v. *Neilson,* 47 Mont. 132, Ann. Cas. 1914C, 963, 131 Pac. 30; *Edwards* v. *Lewis and Clark County,* 53 Mont. 359, 165 Pac. 297.) Aside from powers expressly conferred by statute, and those of necessity implied, it possesses none, and where a reasonable doubt exists as to the existence of a particular power, it must be resolved against it. (*Sullivan* v. *Big Horn County,* 66 Mont. 45, 212 Pac. 1105; *Stange* v. *Esval,* 67 Mont. 301, 215 Pac. 807.) Necessarily, the same rule applies to the boards of county commissioners of counties. (*Ainsworth* v. *McKay,* 55 Mont. 270, 175 Pac. 887.) They are "inferior tribunals of special and limited jurisdiction, and their action must affirmatively appear to be in conformity with some provision of law conferring power on them, expressly or by implication, or it will be held to be without authority." (*State ex rel. Lambert* v.

*Coad,* 23 Mont. 131, 57 Pac. 1092; *State ex rel. Gillett* v. *Cronin,* 41 Mont. 293, 109 Pac. 144; *Morse* v. *Granite County,* 44 Mont. 78, 119 Pac. 286.) The only authority giving county commissioners power to reduce, or in any manner change, assessments of property for taxation, is vested in them as a ·board of equalization, and, when acting as such, they must strictly comply with the authority conferred upon them by statute. When taxes are regularly levied they become a lien on the property taxed; an obligation immediately rests upon the owner to pay the amount ascertained to be due. Thereafter the county commissioners can neither release the property from the lien nor discharge the owner from the obligation. (*Sanderson* v. *Bateman,* supra; *State* v. *Central Pacific R. R. Co.,* 9 Nev. 79.)

The board of county commissioners is constituted the county ▮ board of equalization (sec. 2113, Rev. Codes 1921), and, as such, it is given power ''to increase or lower any assessment contained in the assessment book, so as to equalize the assessment of the property contained therein, and make the assessment conform to the true value of such property in money,'' (Id., sec. 2114); but ''no reduction must be made in the valuation of property, unless the party affected thereby or his agent makes and files with the board a written application therefor, verified ·by his oath, showing the facts upon which it is claimed such reduction should be made'' (Id., sec. 2115). In our opinion, the remedy so provided is exclusive, and this appears to be the universal rule under like statutes.

The author of the treatise on Taxation in Ruling Case Law, Volume 26, page 452, says: ''Where the law provides a remedy for overassessments ·by petition to the assessors or to some other tribunal for abatement, the statutory remedy is exclusive and the tax stands as assessed until abated in accordance with law, if the assessors had jurisdiction to make the assessment. The action of assessing officers being judicial in character, their judgments in cases within their jurisdiction

are not open to collateral attack. If not corrected by some mode pointed out by statute they are conclusive, whatever errors may have been committed in the assessment. Overvaluation of property is not a ground of action at law for the excess of taxes paid beyond what should have been levied upon a just valuation. It is only when the tax is void, either because the person assessed was not subject to taxation in the city or town, not being a resident thereof and owning no taxable property situated therein, or because it was assessed for an unlawful purpose or without compliance with provisions of law imposed for the protection of the taxpayer, that it can be recovered back in a common-law action, or treated as void in proceedings brought to enforce payment of the tax. For this reason a taxpayer cannot have the collection of a tax enjoined merely because it is excessive in amount when the statutes provide an adequate remedy for the abatement and equalization of excessive taxes.'' ''When the statutes provide a remedy against an excessive, erroneous, or improper assessment of the property of an individual, by the proceedings before a board of equalization, or review, the taxpayer must at his peril avail himself of this remedy, and cannot resort to the courts in the first instance; and if he neglects to bring his complaint before the board of review, he cannot assail the assessment in any collateral manner, nor invoke the common-law or equitable powers of the courts for the redress of this grievance.'' (37 Cyc., pp. 1079, 1080; see, also, Black on Tax Titles, sec. 142; Cooley on Taxation, 4th ed., sec. 1201; *Belknap Realty Co.* v. *Simineo,* 67 Mont. 359, 215 Pac. 659.)

The plaintiff's learned counsel place sole reliance upon language employed in the opinion in the case of *Belknap Realty Co.* v. *Simineo,* last above cited, as follows: ''The statutes having made ample provision whereby a taxpayer may have an alleged excessive or erroneous assessment or valuation of his property reviewed by the county and state boards of equalization, this remedy is exclusive *except in cases where fraud or the adoption of a fundamentally wrong principle of as-*

*sessment is shown."* The plaintiff, having failed to show in its complaint that it had availed itself of those remedies, has not stated any grounds to entitle it to relief in court. Its counsel argue that upon the facts in the case now before us, it comes within the exception noted in the above quotation from that decision which we have italicized, that is to say, that the assessments were constructively fraudulent and were based on a fundamentally wrong principle. Although fraud is alleged, there is a total failure of proof; the only evidence offered on either subject being to the effect that plaintiff's property was assessed much higher than like property belonging to its neighbors. This falls far short of proving constructive fraud. Without dispute it appears that the assessments involved were made upon returns subscribed and verified by the plaintiff itself, so that there could have been no fundamentally wrong principle of assessment of the property employed by the assessor in fixing the value thereof. The argument is without merit and the cases cited in support of it do not sustain counsel's contention. (*Danforth* v. *Livingston,* 23 Mont. 558, 59 Pac. 916; *Birch* v. *Orange County,* 186 Cal. 736, 200 Pac. 647; *Birch* v. *Orange County,* 59 Cal. App. 133, 210 Pac. 57.) The proof offered would have been proper before the county board of equalization, and upon such showing that board would have granted relief; but it becomes wholly irrelevant in the present inquiry.

Relief because of excessiveness of the tax imposed could be granted only by the county board of equalization. (*Thwing* v. *Weiser,* 65 Mont. 28, 210 Pac. 750.) The order made by the board of county commissioners was in excess of its jurisdiction and therefore void. Consequently, the judgment must be and is hereby affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MYERS, STARK and MATTHEWS concur.

Rehearing denied July 12, 1928.