STATE ex Rel. KAIN, Relator, *v.* FISCHL, County Treasurer, Respondent.

(No. 7,135.)

(Submitted April 1, 1933. Decided April 7, 1933.)

[20 Pac. (2d) 1067.]

*Mr. William B. Jones,* for Relator, submitted a brief and argued the cause orally.

*Mr. Sherman W. Smith,* County Attorney of Lewis and Clark County, *Mr. John W. Mahan, Mr. Raymond T. Nagle,* Attorney General, and *Mr. C. J. Dousman,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Dousman* argued the cause orally.

## Opinion: PER CURIAM.

Relator, a resident freeholder and taxpayer of Lewis and Clark county, seeks a writ of injunction prohibiting the county treasurer of that county from publishing a notice pursuant to the provisions of Chapter 41, Laws of 1933, approved March 2, 1933, permitting the redemption of real estate sold at tax sale as in the Act provided, upon the ground that the Act is unconstitutional. As every county, city and town in the state is affected by the provisions of the Act, and the question involved is of general and public interest, we assumed original jurisdiction of the proceeding and directed to the treasurer an order to show cause returnable on April 1. The cause has been submitted on demurrer to the complaint.

Section 1 of the challenged Act reads as follows: "That from and after the passage and approval of this Act, any person having an interest in real estate heretofore sold for taxes to any county or which has been struck off to such county when the property was offered for sale and no assignment of the certificate of such sale has been made by the county making such sale, shall be permitted to redeem the same by paying the original tax, without the payment of any pen-

alty or interest thereon. Such redemption of real estate must be made on or before November 30, 1933, and if such redemption is not made by the 30th day of November, 1933, then redemption can only be made by paying all interest, penalty and costs as now provided by law. This Act shall not apply to the purchaser of any certificate of sale made prior to its passage and approval.''

Section 2 provides: ''County treasurers and city treasurers in their respective counties and cities shall cause to be published in at least one issue of the official newspaper of such county or city a notice of such right of redemption and extension of time, such notice to be published within sixty days from the approval of this Act.''

Section 1 from its first word to and including the words ''the original tax'' is identical with section 1 of Chapter 63, of the Session Laws of 1923; directly following ''the original tax,'' section 1 of Chapter 63 concluded with ''plus seven per cent interest from the date of sale.'' Thus the 1923 Act sought to remit the penalty but to charge interest at the rate of 7 per cent. per annum from the date of sale, while the present Act seeks to remit the penalty and all the interest. The operation of either would diminish the obligation owed to the state by a delinquent taxpayer. After mature consideration this court said Chapter 63 of the Laws of 1923 transgressed the commandment of section 39 of Article V of the Constitution, and declared the Act void. (*Sanderson* v. *Bateman,* 78 Mont. 235, 253 Pac. 1100, 1102.)

It is conceded by counsel for the respondent that while there is some additional language in section 1 of the present Act, as respects the question of constitutionality, it cannot be distinguished from section 1 of Chapter 63, supra, and that in order to sustain the present Act it will be necessary for this court to overrule *Sanderson* v. *Bateman,* supra, and to depart from the rule of *stare decisis.* (See *Yellowstone Packing & Provision Co.* v. *Hays,* 83 Mont. 1, 268 Pac. 555.)

Section 39, Article V, of the Constitution of Montana, declares: ''No obligation or liability of any person, association

or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislative assembly; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury."

Counsel for respondent admit that a tax demand lawfully levied and assessed is a liability within the meaning of this section, but they argue that the 10 per cent. penalty and interest accruing upon a tax demand are not included within the term "liability" and, consequently, not within the inhibition of the above section. To sustain this contention they rely upon *Jones* v. *Williams,* (Tex. Sup.) 45 S. W. (2d) 130, 79 A. L. R. 983, but that case does not so hold. There the supreme court of Texas sustained an Act remitting penalties, including interest which it treats as a penalty, for tax delinquents on the theory that the Constitution of Texas (Art. III, sec. 56) permits the legislature by a general law to remit "fines, penalties, forfeitures, and escheats."

The Texas court does not consider whether the exaction of an amount in addition to the delinquent tax constitutes a liability incurred by the taxpayer, although the Constitution of that state prohibits the legislature from extinguishing "in whole or in part, the indebtedness, liability or obligation of any incorporation or individual, to this state, or to any county or other municipal corporation therein" (Art. III, sec. 55, Constitution of Texas), and it does not cite its own decision in *Ollivier* v. *City of Houston,* 93 Tex. 201, 54 S. W. 940, 942, 943 (nor other Texas cases cited post), which involved a statute permitting a taxpayer to plead the statute of limitations in defense to an action instituted by the state for delinquent taxes, which, of course, included penalties under the laws of Texas. In declaring the statute void, the court said: "By that provision of the Constitution the legislature is forbidden to pass any law which would 'extinguish any liability, indebtedness or obligation to the state or any county or city,' and thereby power to extinguish liability for taxes was denied.

The Constitution itself furnishes many evidences of the earnest purpose of the framers to render impossible every form of governmental favoritism. The granting of special privileges, the bestowal of favors, the lightening of the public burdens as to one citizen at the expense of others, are contrary both to its spirit and its letter. So it is declared that taxation shall be equal and uniform. But the force of this provision would be defeated if the power remained to relinquish at will the liability thus justly and fairly fixed. For the prevention of these evils this provision was inserted. Its terms are broad enough to cover every conceivable obligation or liability, the remission of which would diminish the public revenue and thereby either directly or indirectly impose a heavier tax upon those not affected by the exemption.''

In the light of the foregoing it is apt to note that section 15, Article VIII, of the Constitution of Texas, provides in part that ''the annual assessment made upon landed property shall be a special lien thereon, and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent.'' (*Carswell & Co.* v. *Habberzettle,* 39 Tex. Civ. App. 493, 87 S. W. 911.) Under this last cited constitutional provision the supreme court, in *City of San Antonio* v. *Toepperwein,* 104 Tex. 43, 133 S. W. 416, 417, held that a ''homestead is liable, not only for the taxes which are assessed upon it, but also for the penalties which the law prescribes in case of failure to make payment of such taxes,'' notwithstanding the provisions of section 50, Article 16, Constitution of Texas, providing certain exemptions for homesteads.

We do not see how it could be held that the penalty attaching upon failure to pay a tax when due is not a liability. In *State* v. *Pioneer Oil & Refining Co.,* (Tex. Com. App.) 292 S. W. 869, 872, it is said that a tax ''having once become a liability, its irrevocable nature finds source in the constitutional provision.''

As was said in *Sanderson* v. *Bateman,* supra: ''It is within the legislative prerogative to direct the exaction of an addition

to the tax if the taxpayer does not discharge the burden imposed within the time required, as well as interest upon the delinquent tax. (See Cooley on Taxation, 4th ed., secs. 1273–1275.) Whether the addition is to be regarded as a penalty designed to punish the taxpayer for his delinquency or as damages for deferred payment, it is a liability within the meaning of the Constitution, and the same is true, of course, of interest which has accrued." We see no reason to question the pronouncement there made.

The general rule is that when the highest court of a state has construed a constitutional provision, the rule of *stare decisis*—that a question once deliberately examined and decided should be considered as settled—applies, unless it is demonstrably made to appear that the construction manifestly is wrong. Decisions construing the Constitution should be followed, in the absence of cogent reasons to the contrary, as it is of the utmost importance that our organic law be of certain meaning and fixed in interpretation. (7 R. C. L. 1002; Cooley's Constitutional Limitations, 8th ed., 123.)

After the decision in *Sanderson* v. *Bateman,* supra, the legislature knew—was charged with knowledge—that as construed by the supreme court section 39, Article V, of the Constitution, prohibits the remission of taxes regularly levied and assessed, together with such penalty and interest as may have accrued thereon.

The present Act is intended to favor certain persons only: Those whose property has been struck off to the county when the property was offered for sale, "and no assignment of the certificate of such sale has been made by the county making such sale," and who pay their delinquent taxes on or before November 30, 1933. "Those who pay after that date must pay all interest, penalty and costs as now provided by law. This Act shall not apply to the purchaser of any certificate of sale made prior to its passage and approval."

The Act, therefore, advances a plan which would operate to reward a taxpayer who has not paid his tax at the expense of one who has. The taxing authorities received the money

of the one who paid his taxes and have since withheld it; this taxpayer must suffer for having paid his taxes to the extent that he has been without the use of his money since he paid, while the other, who did not pay, would save by failing or refusing to pay. But as was said respecting the 1923 Act, "the Act upon its very face discriminates in favor of one who, although unable to prevent delinquency by payment, was fortunate enough to have his property struck off at tax sale to the county as against another whose property at the same time was struck off to a citizen. The latter, to effect a redemption, must pay the original tax, addition, interest, and costs; or, if the county has assigned its certificate of sale to a citizen, the redemptioner must assume and discharge a like burden." (*Sanderson* v. *Bateman,* supra.) In so far as the law operates upon taxpayers of the same class, requiring, as it does, full payment from some delinquents and the remission of taxes as to others, it does not afford to all in the same class the equal protection of the laws and is contrary to the Fourteenth Amendment.

It also violates the spirit, if not the letter, of section 11, Article XII, of the state Constitution, which declares that taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Under a Constitution which provides that taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, discrimination between taxpayers upon whom taxes have been levied and assessed upon the same class of subjects cannot be permitted, for that necessarily implies inequality and injustice; "special privileges are always obnoxious, and discriminations against any person or class still more so." (*Hilger* v. *Moore,* 56 Mont. 146, 182 Pac. 477, 483.)

The wellspring of the Act was to alleviate the condition of █ our unfortunate fellow-citizens who, unable to pay their taxes, were forced to see their lands sold at tax sales. In the view of the legislature, as expressed in section 4 of Chapter 41, an extraordinary emergency existed by reason of the present world-wide economic condition. Whether the policy of favor-

ing some taxpayers of the same class over others is wise or unwise, the emergent conditions considered, is not for us to decide, nor was it a subject upon which the legislature had a right to legislate, for the expression of the supreme will of the people—the Constitution—decides the policy for us all. It must be remembered that the provisions of the Constitution are mandatory and prohibitory unless otherwise expressed, and these provisions read the same whether in fair weather or in foul. The proposition that an emergency justifies a removal of constitutional safeguards is an egregious fallacy. A safeguard once let down inevitably must lead to mischief. If one be let down, why not another? "And many an error, by the same example, will rush into the state." Our duty is clear. Each of us upon assuming office took an oath "to support, protect, and defend the Constitution of the state of Montana," and from this obligation we shall not shrink.

Notwithstanding the declaration in the Act that, if any section be declared unconstitutional, the decision shall not affect the validity of the remaining portion, section 1 failing, section 2, which provides for the publication of notice, is without reason for its operation.

The demurrer is overruled. Let a peremptory writ issue as prayed for, forthwith.

All Justices concurring.