# FIRST NATIONAL BANK OF GLENDIVE, Appellant, *v.* COUNTY OF DAWSON et al., Respondents.

(No. 5,764.)

(Submitted October 23, 1925.   Decided November 10, 1925.)

[240 Pac. 981.]

*Cities and Towns—Water Bonds—Interest—Taxation to Make Up Deficiency—Illegal Levy—Taxpayer's Suit—Burden of Proof.*

Cities and Towns—Water Bonds — Interest — Levy to Make Up Deficiency—Taxes Paid Under Protest—Evidence—Insufficiency.
1.  In an action by a city taxpayer to recover taxes paid under protest on a levy made for the purpose of providing an adequate sinking fund and for interest on the bonds issued for the acquisition of a municipally owned water plant, on the ground that but for the wrongful diversion of revenue derived from the plant the levy would have been unnecessary, evidence *held* insufficient to warrant a finding in favor of plaintiff, nothing appearing as to the status of the interest and sinking fund, as to the amount of bonded indebtedness already paid, as to the amount of revenue available, as to the amount of interest due, and when payable, as to the amount raised by the tax, as to the total taxable value of the property in the city, *etc.*

Same—Taxation—Illegal Levy—Taxpayer's Suit—Burden of Proof.
2.  A taxpayer who attacks a levy made by a city for the creation of an adequate sinking fund and for the payment of interest on outstanding water bonds on the ground that the revenues derived from the plant are sufficient for those purposes and the levy unnecessary has the burden of showing that the levy is unnecessary.

---

Municipal Corporations, 28 Cyc., p. 1563, n. 3; p. 1673, n. 5; p. 1709, n. 29.

*Appeal from District Court, Dawson County, in the Seventh Judicial District; Stanley E. Felt, a Judge of the Sixteenth District, presiding.*

Action by the First National Bank of Glendive against the County of Dawson and others.   From a judgment for plaintiff for less than its demand, it appeals.   Affirmed.

*Messrs. Hurley & O'Neil,* for Appellant, submitted a brief; *Mr. C. C. Hurley* argued the cause orally.

It is the contention of the plaintiff that the indebtedness for which this tax was levied was all incurred upon an express understanding and agreement between the city of Glendive and the people thereof that the same should be paid from the earnings of the municipal water plant, and that the city of Glendive had no right to resort to taxation for the purpose of paying these bonds or the interest thereon, in any event except that the revenue from the water plant was not adequate to pay the same. Under no circumstances did the defendant city have the right to use the earnings of its water plant for the purpose of making any extensions of its water system or expenditures in the nature of capital investment or for other municipal purposes, unless it has first made adequate provisions for a sinking fund and interest requirements of its various bond issues in reference to the water system.

The conditions upon which the bond in question issues were submitted to the people were contractual in their nature and are binding upon the city of Glendive. (28 Cyc. 283; *Edwards* v. *City of Helena,* 58 Mont. 292, 191 Pac. 387; see, also, *Public Service Com.* v. *City of Helena,* 52 Mont. 527, 534, 159 Pac. 24; *McClintock* v. *City of Great Falls,* 53 Mont. 221, 163 Pac. 99.)

Under section 6, Article XIII, of the Constitution, the legislature has authority to authorize a municipal corporation to incur an indebtedness in excess of three per cent of the value of the taxable property therein, upon certain conditions, to-wit: First: When such increase is necessary to constitute a sewerage system or to procure a supply of water for such a municipality. Second: The municipality must own and control said water supply. Third: The municipality must devote the revenue derived therefrom to the payment of the debt. The legislature has no right to authorize a city to incur an in-

debtedness in excess of three per cent of the value of its taxable property upon any other conditions.

*Mr. Stanley M. Doyle* and *Mr. George W. Farr,* for Respondents, submitted a brief; *Mr. Farr* argued the cause orally.

The implied power exists in the city council to levy any tax necessary to pay any of its indebtedness. (Abbott's Municipal Corporations, sec. 305; Hainer's Municipal Securities, sec. 123 *et seq.*) This is particularly true as to the payment of the principal and interest of its negotiable bonds. The power, whether express or implied, is of such a character as to constitute a contract between the bondholders and the corporation, which cannot be affected or destroyed until the contract is satisfied. (Abbott on Mun. Corp., sec. 224; *United States* v. *New Orleans,* 98 U. S. 381, 25 L. Ed. 225 [see, also, Rose's U. S. Notes]; *Loan Assn.* v. *Topeka,* 20 Wall. (U. S.) 655, 22 L. Ed. 455; *Wolf* v. *New Orleans,* 103 U. S. 358, 26 L. Ed. 395.) Neither the city nor the taxpayers can now be heard to question the acts of its city officials in not making proper application of revenue of water plant toward payment of interest of bonds or in providing a sinking fund.

The bonds constitute a contract between the city and their holders, and neither the city itself nor its taxpayers may be heard to say that it can be violated because the city officials have not in some respect done their duty. The bonds are the legal obligations of the city which the city is required to pay. (Burnham's Law of Municipal Bonds, sec. 81.) Taxpayers may maintain suits against towns and their officials to prevent or remedy misapplication of municipal funds, their relation to the municipality being analogous to those of stockholders in a private corporation, and equity has power in such cases to grant affirmative as well as injunctive relief. (Smith on Modern Law of Municipal Securities, secs. 678 and 1647A; Dillon on Municipal Corporations, sec. 1687; McQuillin on Municipal Corporations, sec. 2596.)

It is our opinion that the rights of the bondholders are to be held paramount to the rights of the taxpayers; that as to the city and its taxpayers, their remedy for a wrongful diversion of the city's funds is by either injunction or *mandamus*, and that, if there has been any diversion of the funds of the water department of the city of Glendive by the city officials, plaintiff has mistaken its remedy.

MR. JUSTICE GALEN delivered the opinion of the court.

This action was brought by the plaintiff to recover from the defendants taxes paid under protest for the year 1923, in the aggregate amount of $282.40, together with interest on the sum of $141.40 from the thirtieth day of November, 1923, and interest on a like amount from the twenty-eighth day of January, 1924, at the rate of eight per cent per annum. A demurrer to the complaint was filed and overruled, and thereafter, the defendants having failed to answer, the cause was brought on for hearing before the court without a jury upon an agreed statement of facts and oral evidence. Judgment was entered in favor of the plaintiff for the sum of $141.40, together with interest and costs. The plaintiff has appealed from the judgment.

The only question presented by the plaintiff's assignment of errors is whether it was entitled to recover judgment for the full amount claimed in its complaint. The suit involves the legality of certain items of a tax levy made by the city of Glendive for the year 1923. It appears that for that year the plaintiff was assessed on a property valuation of $91,950, which for the levy of taxes was fixed at $35,351. The contention of the plaintiff is that certain of the taxes levied for the year 1923 against its property, and by it paid under protest, are unlawful and void, and that it is entitled to judgment for the full amount as prayed in its complaint.

On August 20, 1923, the city council, for the purpose of determining the tax to be levied upon the taxable property within

the city limits, passed and approved a resolution, numbered 131, which was thereupon duly certified to the board of county commissioners of Dawson county, and by it made the basis of a levy of 21.6 mills upon all taxable property in the city of Glendive for city purposes. Some of the items of tax levy are admitted by the plaintiff to be legal, while others are conceded by the defendants to be illegal. Those specifically involved on this appeal are as follows: "Sinking fund for the payment of bonds and interest on city water supply bonds of 1905 as provided for by Ordinance No. 371 of the city of Glendive, Montana, one and one-half mills; sinking fund for the payment of bonds and interest on city water supply bonds as provided for by Ordinance No. 372 of the city of Glendive, Montana, one-half (½) mills; sinking fund for the payment of bonds and interest on second additional coupon water supply bonds as provided for by Ordinance No. 373 of the city of Glendive, Montana, two (2) mills."

These items of tax levy relate to three separate bond issues of the city of Glendive, the last mentioned of which, for $65,000, was in excess of the three per cent constitutional limit of indebtedness. Each of these bond issues was executed after submitting the question of whether they should be issued to a vote of the electors, upon the stipulated condition, submitted and voted upon, that the money derived should be used for a city water supply, and the revenues therefrom devoted to the payment of the indebtedness. The judgment entered in plaintiff's favor is for the amount of taxes paid by it, admitted to be illegal.

It is contended by the plaintiff that the indebtedness for [1] which these taxes were levied was incurred with express understanding, had between the city of Glendive and its electors, that it should be paid from the earnings of the city water plant, and that the city has no right to resort to taxation in order to pay the bonds or the interest thereon, unless the revenue from the water plant is wholly inadequate. In relation

thereto it is alleged in plaintiff's complaint: "That at all times since the year 1906 the net revenues derived from the waterworks system in the city of Glendive has been sufficient for the purpose of paying interest on each and all of said bond issues and providing a sinking fund as provided by law; that the city of Glendive has unlawfully diverted large sums of money from the water funds and from the earnings of said waterworks system, and used the same for other municipal purposes; that the earnings from the said waterworks system of 1923 were adequate to pay the interest on the indebtedness and providing a sinking fund as provided by law, and the city of Glendive would now have adequate funds in the water fund of the city to pay interest on the said bonded indebtedness, and to provide a sinking fund as provided by law, had not such earnings of the said waterworks system been unlawfully diverted from the waterworks system and used for other municipal purposes."

The only issue presented was whether the earnings of the water department had been wrongfully diverted, and, if so, whether the amount misapplied was sufficient to meet the interest due on the bonds and provide a sinking fund for their retirement, without resort to taxation. There were but two witnesses, one for the plaintiff, and one for the defendants. The city clerk gave testimony for the plaintiff, and the superintendent of the water department for the defendants. There is no material difference in their testimony, save that plaintiff's witness gave evidence as to the condition of the water funds for the fiscal year ending April 30, 1923, while the witness for the defendants testified as to the calendar year from January 1 to December 31, 1923.

The record is not clear as to the dates of the bond issues involved, nor is the interest rate thereof shown. The first issue, referred to in Ordinance No. 371, appears to have been for the sum of $45,000, redeemable after three years at the rate of $3,000 per year, and payable in twenty years; the sec-

ond, mentioned in Ordinance No. 372, appears to have been for the sum of $15,000, redeemable at the rate of $1,000 per year after November 1, 1911, and payable in twenty years; and the third, adverted to in Ordinance No. 373, appears to have been for the sum of $65,000, redeemable at the rate of $6,500 in any year after the expiration of ten years, and payable in twenty years.

The proof discloses that the gross earnings from the water department for the fiscal year ending April 30, 1923, was the sum of $41,231.51, and that the operating expenses for the same period amounted to $31,009.63, leaving a profit of $10,-221.68; that the city derived other revenue, designated as "nonoperating," amounting to the sum of $12,606.89, making a total net income of $22,828.77. Among the items going to make up "nonoperating revenue," the sum of $8,849.64 was derived from taxes levied to meet the three items involved herein, and, deducting that amount, the city would have a net revenue of $13,979.13. In this sum there is included a premium of $800 derived from the sale of bonds, deducting which, a net revenue of $13,179.13 is shown. Interest charges for the fiscal year on the city's bonded indebtedness amounted to $7,150, and during that period there was $1,399.18 put into the sinking fund, so that the total amount paid for interest and set aside for the redemption of the bonds amounted to $8,549.18. Deducting this amount from the net revenue of $13,179.18, there would still remain to the credit of revenues available for the payment of the bonds the sum of $4,629.25. It is shown that an item of $508.65 was charged and paid in 1923 as part of the operating expenses, which amount was in fact used to pay a judgment in favor of the plaintiff herein because of illegal taxes levied against it in the year 1917, or even an earlier date than that.

To sustain the allegation of the unlawful diversion of the revenues of the water department, it appears that during the year ending April 30, 1915, there was transferred to the city

hall building fund $7,046.54, and to the general fund $11,520, a total of $18,566.54. If we add to this amount the sum of $508.65 paid out and charged to operating expenses in 1923, to satisfy plaintiff's judgment for illegal taxes levied against it in 1917, or prior thereto, the total amount shown to have been unlawfully diverted is the sum of $19,075.19. There was no allegation or proof as to the total taxable value of the property in the city of Glendive, nor the amount which would be raised by this four-mill levy. There is no evidence as to the status of the "interest and sinking fund," or whether there was any money therein available for the redemption of the bonds. There is nothing in the record to show the necessity, or the lack thereof, for the tax levies made. However, in the course of the hearing counsel for the plaintiff observed: "So far as I have been able to find, there isn't anything left to divert. They seem to have milked the cow pretty dry"— which rather indicates that additional funds were required to pay the bonds.

The total bond issue was for $130,000. From the record it does not appear that the amount shown to have been illegally diverted, together with other revenues available, was sufficient; therefore it cannot be determined whether resort to taxation was necessary. There is no way of determining what amount of revenue was available; there is nothing to show what amount, if any, of bonded indebtedness has already been paid; there is no way of determining the amount of interest due; there is no way of determining how much money would be raised by the tax; nor is there any showing as to the amount of interest accrued or required to be paid, nor when it is to be paid.

As to the first and second bond issues, the net revenues derived from the operation of the waterworks should have been devoted to their payment because of the contractual relation existing between the city and its electors, and, as to the third, such revenue should have been so applied for the additional

reason that the Constitution demands it. (Sec. 6 of Art. XIII.) From the proof it is not possible to determine whether resort to taxation was necessary to pay interest and create a sinking fund for their redemption. Conceding that the sum of $19,075.19 of the net income was unlawfully diverted, it is not possible, under the proof, to determine what additional amount, if any, was required to pay interest and set aside the sinking fund needed to retire the bonds. Proof showing that there was a surplus in the water fund on April 30, 1923, the end of the fiscal year, is not conclusive evidence as to the condition of the fund on August 20, 1923, when the tax-levying resolution was passed, nor as it existed on May 30, 1924, when the taxes levied pursuant to the resolution were available. The court was left wholly in the dark as to the amount of interest on the bonds necessary to be paid, and as to the time when payments were required to be made on the principal, as well as the amount thereof.

The court found: ''The levy was made to take care of the financial needs of the department a year later than that covered by the evidence given by the plaintiff. There was no evidence given upon the operating expenses for the year beginning May 1, 1923, even up to the time when the council passed its resolution on August 20, 1923. Furthermore it would rather seem that the amount set aside for the sinking fund during the period ending April 30, 1923, *viz.*, $1,399.18, would be rather small to set aside to pay a bond issue of $130,000. For all that has appeared in the evidence, the council may have seen the necessity of not only making more ample provisions for the sinking fund during the year when the proceeds of this tax would be available, but also to take care of the amount which should have been set aside during the previous year. As a mere matter of arithmetic, the plaintiff has not shown itself entitled to recover.''

The plaintiff's theory as to the law was correct (*Edwards*
[2]    v. *City of Helena,* 58 Mont. 292, 191 Pac. 387; Const. Art.

XIII, sec. 6), but the burden of proof devolved upon it to show that the tax levy was entirely unnecessary, which it failed to do. As said by Mr. Justice Holloway, speaking for the court in the *Edwards Case,* above cited: "It is a matter of vital consequence to the taxpayer whether the bonds are within or beyond the three per cent limit. If they are beyond that limit, and authorized by section 6, Article XIII, of the Constitution, the revenues from the city-owned water plant are irrevocably set aside and dedicated to the discharge of the interest and principal, and a taxpayer who is not a water user may not be called upon to contribute anything, unless the water plant revenues are insufficient, and then only may a property tax be levied to supply the deficiency. On the other hand, if the margin within the three per cent limit is sufficient to admit of a bond issue in the amount necessary, such bonds become the ordinary obligations of the city, to be redeemed by funds derived from direct taxes upon property within the city, unless other provisions are made for their payment and the payment of the interest as it becomes due."

In the condition of the record it cannot be said that the revenues from the water plant were adequate to pay interest accruing and create a sinking fund for the payment of the bonds. If they were not, then a tax levy to make up the deficit was warranted. The court was fully warranted in concluding, as it did, that for all that appears from the evidence, the city council may have seen the necessity of making more ample provisions for paying interest and creating a sinking fund.

The proof was not sufficient upon which to predicate a judgment for the amount involved in this appeal. Accordingly the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, STARK and MATTHEWS concur.