SCHOOL DISTRICT No. 1, APPELLANT, *v.* CITY OF HELENA, RESPONDENT.

(No. 6,641.)

(Submitted March 8, 1930. Decided April 19, 1930.)

[287 Pac. 164.]

*Mr. L. A. Foot*, Attorney General, and *Mr. C. N. Davidson*, Assistant Attorney General, for Appellant, submitted a brief; *Mr. Davidson* argued the cause orally.

304

*Mr. Claude L. Meredith* and *Mr. John G. Brown,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff has appealed from a judgment entered in favor of defendant. The controversy was submitted to the court without pleadings upon agreed facts, pursuant to the provisions of section 9872 et seq., Revised Codes 1921.

The facts show that plaintiff is a regularly created school district owning property in the city of Helena; that the city council created several special improvement districts in which property of plaintiff was included; the question of the liability of the school district for special assessments for certain improvements and for interest and penalty upon delinquency gave rise to the controversy. Four questions were submitted for determination, all of which were answered in the affirmative by the trial court.

306

The first question was: "Can the defendant tax school district No. 1 for the assessments accrued on account of special improvements on streets or in sewers adjacent to property owned by said school district within the said city?" Affirmative answer to this question was proper by reason of the decision in the case of *City of Kalispell* v. *School District No. 5*, 45 Mont. 221, Ann. Cas. 1913D, 1101, 122 Pac. 742.

The second question presented was: "In the event of the school district's failure to pay special improvement district assessments, can the city charge penalty, advertising costs and interest?"

Assessments for special improvements are made subject to the same penalties and interest in case of nonpayment as are provided by law for other delinquent taxes. (Sec. 1(d), Chap. 78, Laws 1929, and sec. 1(b), Chap. 79, Laws 1929.) This legislation came along after the decision in the case of *City of Kalispell* v. *School District, supra.* No distinction was made by the legislature between assessments against property of a school district for special improvements, and privately owned property.

Since the property of a public corporation is subject to assessment for special improvements the same as private property (*City of Kalispell* v. *School District, supra; Ricker* v. *City of Helena*, 68 Mont. 350, 218 Pac. 1049, it follows that, in the absence of legislative declaration to the contrary, a school district is liable for penalties and interest in case of delinquent assessments against it, the same as the property of any private owner. There is no more valid objection to the imposition of a penalty and interest in case of delinquency than there is to the imposition of the original assessment. When penalties and interest attach they become a part of the original obligation. (*Sanderson* v. *Bateman*, 78 Mont. 235, 253 Pac. 1100.) If this result works a hardship on the school district, the answer is that it was brought about by its own act in not making provision for the payment of the assessments when due. The penalty and interest may be avoided by the prompt payment of the assessments,

It is contended by plaintiff that the imposition of a penalty ▮ made payable by a school district is in violation of the provisions of section 3, Article XI, of the Montana Constitution, which declares that the "public school fund shall forever remain inviolate." But the school fund there referred to is the permanent school fund made up as provided in section 2, Article XI, of the Constitution, and in section 1201, Revised Codes 1921.

Section 6 of Article XI of the Constitution provides: "It shall be the duty of the legislative assembly to provide by taxation, or otherwise, sufficient means, in connection with the amount received from the general school fund, to maintain a public, free common school in each organized district in the state, for at least three months in each year," and section 5, Article XII, of the Constitution, also authorizes taxes for school purposes. Pursuant to the authorization by these constitutional provisions, the legislature has made provision for the support of common schools by annual tax levies (sec. 1202, Rev. Codes 1921), and has authorized special levies "to furnish such appliances and apparatus as may be needed" (sec. 1203, Id.), and has otherwise provided means of raising money for the support of common schools. The guaranty contained in section 3 of Article XI has nothing to do with the school funds raised by tax levies. The penalties for nonpayment of assessments for special improvements are not attempted to be made payable from the permanent school fund, and obviously could not be. By section 1008, Id., formerly section 881, Revised Codes 1907, the board of trustees has authority to meet assessments of special improvement districts (*City of Kalispell* v. *School District,* supra), and moneys expended therefor are for school purposes because of special benefits conferred upon school property. Advertising costs are also collectible by reason of section 5247 and section 5214, Revised Codes 1921, to which section 5251, as amended by Chapter 78 of the Laws of 1929, makes reference. (*State ex rel. City of Wolf Point* v. *McFarlan,* 78 Mont. 156, 252 Pac. 805.)

The third question for consideration is: "Can the defendant city legally levy light and maintenance against the plaintiff school district in localities where the said school district owns property in said special improvement district areas?"

By express legislative authority the city council is empowered to create special improvement districts for the purpose of lighting the streets and to require not more than three-fourths and not less than one-fourth of the cost of installing and maintaining the lighting system to be paid by the owners of the abutting property. (Sec. 5259, Rev. Codes 1921, as amended by Chap. 143, Laws 1927.) Included as a part of the cost is the "annual cost of supplying electrical current for and maintaining the lights." (Sec. 5260, Id., as amended by Chap. 143, Laws 1927.) By the command of section 5259, as amended, only such property may be included in the district as is adjacent to the street or highway proposed to be lighted or which may be declared by the city council to be benefited by the improvement to be made. Section 5261, as amended by Chapter 143, Laws of 1927, requires notice to be given of the passage of a resolution of intention to create the district, and authorizes any property owner liable to be assessed to make protest against the extent or creation of the district. The owners of a majority of the property protesting may prevent the proceedings. In determining the sufficiency of the protests, "property owned by a county, city or town shall be considered the same as other property in the district." The city council shall hear and pass upon all protests, "and its decision shall be final and conclusive."

Section 5265, as amended by Chapter 143 of the Laws of 1927, makes it the duty of the city council to assess all of the property embraced within the district with the cost of the improvement, excluding only lands belonging to the United States, or mandatory of the government, as provided by section 5271, as amended by Chapter 143, Laws of 1927.

Thus the statutes relating to the creation of special improvement districts for installing a lighting system are identical with

those relating to the creation of improvement districts for other improvements in so far as the sufficiency of protests is concerned and in excluding property only that is owned by the United States or mandatory of the government. (See sec. 5229, as amended by Chap. 135, Laws 1923, and sec. 5238, as amended by Chap. 163, Laws 1925.)

No contention is here made, nor could it well be, that the cost of installing the lighting system is not properly chargeable to the abutting property, including that of the school district. By reason of the decision in the case of *City of Kalispell* v. *School District,* supra, the school property stands on the same footing as privately owned property, and it has generally been held that private property may be subjected to assessments for installing a lighting system. (*City of Springfield* v. *Springfield etc. Co.,* 296 Ill. 17, 129 N. E. 580; *Wicks* v. *Salt Lake City,* 60 Utah, 265, 208 Pac. 538; *Fisher* v. *City of Astoria,* 126 Or. 268, 60 A. L. R. 260, 269 Pac. 853; *Park* v. *Pacific Fire Extinguisher Co.,* 37 Cal. App. 112, 173 Pac. 615; *Brydon* v. *City of Hermosa Beach,* 93 Cal. App. 615, 270 Pac. 255; *Irish* v. *Hahn,* 208 Cal. 339, 66 A. L. R. 1382, 281 Pac. 385; *Bragdon* v. *City of Muskogee,* 133 Okl. 224, 271 Pac. 1006; *Bank of Commerce* v. *Huddleston,* 172 Ark. 999, 50 A. L. R. 1202, 291 S. W. 422.)

There are, of course, limitations upon the kind of fixtures, the cost of which may be charged against the abutting property owners. Thus it has been held that the cost of a power-house and generator engine for the purpose of generating electricity may not be imposed upon the owners of property abutting on the street where light posts and lamps were installed. (*Ewart* v. *Western Springs,* 180 Ill. 318, 54 N. E. 478.) And a statute authorizing the city officials to supply a street with lamp-posts at the expense of the owners of property benefited has been held not to authorize the assessment of abutting property with the cost of extending the distributing system of the city's electric lighting plant by conduits and cables. (*Wilt* v. *Bueter,* 186 Ind. 98, 111 N. E. 926.) But here no question is raised

regarding the kind of fixtures involved in the cost of the improvement for the lighting system. The only contention made is that it was not proper to charge the cost of furnishing the electrical energy to the school district. It is contended that such an improvement is not of a permanent but of an evanescent nature, and that it comes within the same rule as the cost of sprinkling streets, which this court has held is not such an improvement that may be charged against the property of a school district, in the case of *City of Butte* v. *School District*, 29 Mont. 336, 74 Pac. 869.

We think the court properly held the property of the school district liable for the cost of furnishing electric energy. Electric energy is necessary to accomplish the purpose of installing the lighting system and to make the system effect the object of the installation. The same question was considered by the supreme court of Washington, as to privately owned property in the case of *Ankeny* v. *City of Spokane*, 92 Wash. 549, L. R. A. 1917A, 1093, 159 Pac. 806, 809, where the court said: "Following the rule of the courts which do not require permanency as an essential element of a local improvement, we see no reason why it may not be so charged. It is from the electric current that the light is derived, and it is the light that furnishes the entire benefit to the property. The lamp posts, the conduits, wires, and lamps, are but the means of carrying the current and diffusing the light at the proper places. Of themselves they are of no benefit to property abutting upon the streets in which they are constructed. On the contrary, standing alone, they would be obstructions in the streets, narrowing and hindering its use as such, of no possible benefit to the public at large, and rendering abutting property of less rather than of greater value. No rule of law would justify their erection and maintenance in a street, were they not the necessary means to a desired end. It is difficult to understand, therefore, why the cost of this mechanical part of the improvement can be charged to abutting property specially benefited by the lighting of the street, while the cost of the electric energy,

without which there can be no completed improvement, cannot be so charged. We think there is no room for such a distinction, that the mechanical contrivances and the electrical energy are but parts of a complete whole, and that it is the whole, and not one of the parts, that confers the benefits. As such it seems to us clear that the cost of the whole may be charged as a local improvement in so far as private property is benefited thereby."

While, as stated, the question was considered in that case with reference to private property, we think the same reasoning applies to property owned·by a school district. That the cost of installing posts and lamps may be chargeable to the school district there can be no doubt, and we think it is equally clear that the cost of the electric current to make the posts and lamps accomplish the purpose of their installation, and thus serve as a benefit to the abutting property, is likewise chargeable to the property of the school district. It should be noted, also, that the Washington court followed the rule of those courts which do not require permanency as an essential element of a local improvement; but, whether we follow the one rule or the other, the conclusion is the same. The permanent improvement is the electric lighting system as a whole. Without the electric energy the lighting system would confer no benefits upon the abutting property. With the electric energy supplied, the improvement becomes a permanent one. The district court properly answered this question in the affirmative.

The fourth question arises out of the following stipulated facts: "There has been a failure to pay certain special improvement district taxes for sewerage districts in areas which include school property of the plaintiff in the defendant city, and by reason of such failure the city has re-assessed the amount of such delinquencies against other property in such districts. The taxes so levied on such re-assessments against the plaintiff's property are as follows: Sewer No. 1–A—Affecting Broadway School, for the sum of $100.00; Sewer No. 22,

affecting Hawthorne, Central and Sheridan Schools, $54.55; Sewer No. 27, affecting Lincoln and Jefferson Schools, $4.30 making a total of $158.85 and defendant is claiming these as proper charges against plaintiff because of the failure of some of the property situated in such districts to pay their assessments for construction, and because such delinquencies have been re-assessed against other property."

While this statement of the facts is not free from ambiguity, we think its reasonable construction is that certain property not belonging to the school district was assessed for special improvements, and the assessments were permitted to go delinquent, and that the reassessment attempts to charge the delinquent assessments against other property in the improvement districts including that of plaintiff school district.

The city attempts to justify this procedure under section 5252, Revised Codes 1921. We think this section does not authorize the reassessment of any of the property in a special improvement district to make up for delinquent assessments against other property. Its provisions have to do with the correction of invalid or erroneous assessments by reassessment. A reassessment cannot be made unless authorized by statute, and then only in the manner provided. (Page & Jones on Taxation by Assessment, sec. 958.) We think that the statutes relating to special improvement assessments contemplate that the lien of the assessments extends to each lot or parcel of land separately and not jointly, and that, when the assessment against one lot or parcel of land is paid, the lien is discharged. (Sec. 5247, Rev. Codes 1921; *Pennell's Appeal*, 2 Pa. 216.) Delinquent assessments of some property may not be charged against other property without ignoring the requirement of apportioning assessments according to benefits received.

The principle here involved was considered in the case of *Oklahoma City* v. *Eastland*, 135 Okl. 155, 274 Pac. 651, 654, where the supreme court of Oklahoma said: "If the city should carelessly and negligently permit an individual who owned property abutting street improvements to obtain an injunction

against the collection of the taxes against his land, when as a matter of law there was no justification for such a decree, it would not even be contended that those special assessments affected by the decree could be heaped upon other property which had borne its just share of the expenses of improvements. The Act which authorizes the levying of special assessments requires that such expenses shall be apportioned among the lots and tracts of land benefited according to the benefits received. The plan attempted by the city does not meet this requirement, and cannot here be given sanction."

The fact, if it be so, that the plaintiff has not paid its original assessment does not alter the rule, for its property is liable therefor, and we think the delinquent assessments on other property in the district may not be charged to its property. For other cases sustaining this principle, though under facts somewhat different, see *City of Chicago* v. *People ex rel. Hiram Norton,* 56 Ill. 327; *Mayor* v. *Morris,* 61 N. J. L. 127, 38 Atl. 819; *State* v. *District Court,* 95 Minn. 503, 104 N. W. 553; *German Lutheran Church Society* v. *City of Mt. Clemens,* 179 Mich. 35, 146 N. W. 287; *City of Chicago* v. *Crozer,* 246 Ill. 511, 92 N. E. 947.

The court erred in sustaining the reassessment of plaintiff's property in the sum of $158.85.

The cause is remanded, with direction to modify the judgment by eliminating therefrom the sum of $158.85, and, as thus modified, it is affirmed.

Mr. Chief Justice Callaway and Associate Justices Matthews, Galen and Ford concur.