STATE EX REL. MUELLER, APPELLANT, *v.* TODD ET AL.,
RESPONDENTS.
(No. 8,291.)

(Submitted September 17, 1942. Decided December 15, 1942.)

[132 Pac. (2d) 154.]

*Mr. Emmet O'Sullivan,* for Appellant, submitted a brief, and argued the cause orally.

*Mr. G. J. Jeffries,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This appeal is from a judgment of the district court of Golden Valley county, denying to relator a writ of mandate.

On December 10, 1919, Ordinance No. 23 of the town of Ryegate, Montana, was passed, providing for the holding of a special election to determine whether or not the indebtedness of the town should be increased over the three per cent. limit fixed by section 6, Article XIII of the Constitution of the State of Montana, for the purpose of procuring a water supply and constructing a water system. The material part of the ordinance is as follows:

"That a special election be held in the Town of Ryegate * * * for the purpose of * * * ascertaining the will of the taxpayers to be affected * * *, and that authority may be given * * * the town council * * * to increase the indebtedness of said town over and above the three per cent. limit * * *, and within the extent of the limit of ten per cent. provided by law by the issuance of water bonds of said town to the amount of fifteen thousand dollars ($15,000.00), * * * That the amount and character of the bonds proposed to be issued * * * shall be as follows: That said bonds shall be fifteen (15) in number and numbered consecutively from one to fifteen, inclusive, of the denomination of one thousand dollars ($1,000.00) each, aggregating the sum of fifteen thousand dollars ($15,000.00); said bonds shall be designated 'Water Bonds' * * *. Said bonds shall bear interest at the rate of six per cent. (6%) per annum, payable semi-annually on the first day of January and July of each year; said bonds shall be dated the first day of January, A. D., 1920, and shall be absolutely due and payable in series in the following manner: Bond No. 1, payable on January 1, 1931; Bond No. 2 payable on January 1, 1932; Bond No. 3 payable on January 1, 1933; Bond No. 4 payable on January 1, 1934; Bond No. 5 payable on January 1. 1935; Bonds No. 6 and 7 payable on January 1, 1938; Bonds No. 8 and 9 payable on January 1, 1937; Bonds No. 10 and 11 payable on January 1, 1938; Bonds No. 12 and 13 payable on January 1, 1939; Bonds No. 14 and 15 payable on January 1, 1940; and each of said bonds shall be redeemable at the option of the said town on the first day of January preceding the date of its absolute maturity * * *. A tax * * * must be levied each year for the purpose of paying interest on the bonds and to create a sinking fund for the redemption. Whenever at any time after any such bonds become redeemable the sum in the sinking fund equals or exceeds $1,000, the town treasurer must redeem such amount of the bonds which may then be payable or redeemable according to law."

The election was held on January 8, 1920. A majority of the votes cast was in favor of the proposed increase in the indebtedness of the town. On February 11, 1920, Ordinance No. 25 of the Town of Ryegate was enacted. It recited the facts concerning the passage of Ordinance No. 23 and directed that the water bonds be issued. The material parts of Ordinance No. 25 are as follows: "Said bonds shall be absolutely due and payable in series [reciting the schedule noted above] * * * and each bond shall be redeemable at the option of the town on the first day of January preceding the date of its absolute maturity."

Fifteen negotiable "water bonds," each dated January 1, 1920, and payable to bearer, were issued by the town as provided in the ordinance. Relator purchased in due course Bond No. 13 of the issue for value prior to its maturity date and now asserts his claim as the owner and holder of the bond. The bond provides that the Town of Ryegate acknowledges its indebtedness to, and promises to pay, the bearer on the first day of January, 1939, $1,000, with interest at the rate of six per cent. per annum, payable semi-annually; that it was one of a series of bonds issued for the purpose of procuring a water system for the town; that it was issued under and in conformity with the Constitution and laws of the State of Montana, pursuant to a vote of the majority of the taxpayers of the town at a special election held January 8, 1920, and that provision has been made for applying revenue of the water system to the payment of the bonds and to a sinking fund for redemption of the bonds; and that "The full faith and credit of said town are hereby pledged for the punctual payment of the principal and interest of this bond according to its terms."

On October 28, 1939, relator filed an application for a writ of mandate in the district court of Golden Valley county, praying for an alternative writ commanding the respondents to pay Bond No. 13, with interest accrued, and damages and costs, or forthwith to raise funds to pay the said bond by levying sufficient taxes on the property of the taxpayers of Ryegate,

or to show cause why one of the specified courses should not be followed to satisfy his claim. Relator alleged ownership of the bond; that it was due and payable on January 1, 1939; that demand was made on respondents for payment after maturity date; that respondents refused to pay the claim; that there is in the sinking fund a sufficient sum in excess of $1,700; that all of the bonds remain unpaid, and that all save Bonds 14 and 15 are in default.

The initial question presented by the record is whether the treasurer of Ryegate is required, as a matter of law, to call water bonds for payment after maturity in the order of their serial numbers.

It is the contention of relator that the requirement that the bonds be called in their numerical order applies only where they are called for payment on their due date, or where they are called for redemption prior to maturity.

Ordinances numbered 23 and 25 both recite that "said ▇ ▇ bonds * * * shall be absolutely due and payable in series in the following manner; bond number 1 payable on January 1, 1931, bond number 2 payable on January 1, 1932"; etc. The detailed provisions as to the manner in which the bonds are to become due and payable serve only to fix the date upon which payment of the bonds can be made in the absence of an attempted redemption under section 3460, Revised Codes of 1907. The language of the ordinances is plain to the effect that the bonds shall be absolutely payable in series until they are all paid. There is no limitation to be found in the ordinances nor is there a necessary inference that it was intended only that the bonds have their serial characteristic when paid upon their due date. Purchasers of municipal bonds are held to have notice of the contents of ordinances under which the bonds were issued. In this case that is true not only as a general proposition but by the recital in the bond itself to the effect that it is one of a series of bonds and that it is issued pursuant to the ordinances of the town

and a special election held for the purpose of authorizing the bonds. (See *State ex rel. Boyd* v. *Mills,* 133 Wash. 681, 234 Pac. 1042.) In this case, so far as the main question is concerned, no help can be obtained from the reported decisions, as in all of these bond cases determination of questions such as these must rest in the bonds themselves, the ordinances authorizing them or in the statutes, and the cases cited are not applicable for that reason.

Relator asks as an alternative that the town be required to ▇ levy sufficient taxes to secure funds to place in the sinking fund so that eventually his bond may be paid. As one of the defenses to the action the town alleged that for all practical purposes the town is insolvent. Nothing in the record supports this view. The taxable value of the town it is agreed exceeds $60,000. The total general obligations of the town, with the exception of some $500 or $600 in outstanding warrants, is represented entirely by this bond issue. There is a judgment against it based upon certain ▇ invalid improvement district bonds. No discussion of this judgment is necessary as it is not based in any way upon a general obligation of the town and is in no manner any part of the town indebtedness. It appears further that over fifty per cent. of the land in the special improvement district has been taken for taxes and has been resold to private individuals, so that that portion of the special improvement district is no longer subject to the lien of the judgment. The record shows that in 1939 a levy of fifteen mills was made for all purposes of the town, and in the year immediately preceding the levy was twenty mills. By its answer the town further sets up that it is levying the maximum amount allowed by law, and that the amount so raised is only sufficient to take care of the general and administrative expenses of the town.

Section 5194, Revised Codes of 1935, reads in part: "The amount of taxes to be assessed and levied for general municipal or administrative purposes in cities [under 35,000 population] * * * must not exceed one and one-half per centum on the per

centum of the assessed value of the taxable property of the city or town" etc.

The two ordinances above referred to provided: "A charge to be fixed by ordinance must be levied each year for the purpose of paying interest on the bonds and to create a sinking fund for their redemption." From the evidence it is apparent that, as a rule, over the years this injunction of the ordinances was not obeyed by the town. It is further clear therefrom that no tax at all to retire bonds or pay interest thereon was levied in 1939, as required by the ordinances.

Respondents clearly entertain an erroneous view as to the effect of section 5194. That section by its terms is a limit only on the amount of the levy for general, municipal or administrative purposes of the town. As a levy for the retirement of the bonded indebtedness of the town and interest thereon is a special tax it clearly comes within the provisions of section 5278.3, Revised Codes. While that section was not in force at the time the bonds were issued, section 3459, Revised Codes of 1907, was. It provided: "A tax to be fixed by ordinance must be levied each year for the purpose of paying interest on the bonds and to create a sinking fund for their redemption." Section 5194 was then in effect as section 3342, Revised Codes of 1907. Section 5278.3, Revised Codes of 1935, clearly indicates that a tax in addition to that provided in section 3342, Revised Codes of 1907, was contemplated. The town has failed to comply with the requirements of either the ordinances, or of the statute, in that it failed to levy a tax for the purpose of retiring the bonds and pay the interest thereon.

This court had occasion to discuss section 3459, Revised Codes of 1907, in *First National Bank of Glendive* v. *Sorenson,* 65 Mont. 1, 210 Pac. 900, 903, saying: "Section 3459 of the 1907 Codes expressed in positive and unequivocal language the duty imposed upon the city council in this respect, even in the absence of such mandatory provision. (*State ex rel. Great Falls Water Works* v. *Mayor of City of Great Falls,* supra [19 Mont.

518, 49 Pac. 15].) Given the power to create a bonded indebtedness, as already indicated, implies the power to provide for its payment. It was, no doubt, the intent and purpose of the Legislature in enacting this provision, that for the better protection and understanding of the bond-holders, and in order to make municipal bonds more salable, the statute should in express terms provide for that which is already implied. It provided that a tax, to be fixed by ordinance, should be levied. Whether it was intended by this section that the tax should be fixed by ordinance before the levy was made is immaterial. To do this would require, in order to strictly comply with the statute, that a new ordinance be enacted each year, for there could not be an ordinance enacted which would provide for the amount of the levy to be made each year. The levy—that is, the number of mills—would vary from year to year, depending upon the amount of other revenues available, more especially in the case of water bonds, or in fact any bonds issued in behalf of a municipality-owned enterprise producing revenue which must first be applied to such bonds; also depending upon the amount of property subject to taxation in any given year, and upon the total amount of bonds outstanding, particularly in the case of an issue maturing serially. A duty was imposed upon the city council to make certain levies of taxes for certain purposes, which duty could be enforced, if need be, by the holder of any of the city's bonds."

It being the clear legal duty of the city to levy a tax for the purpose of retiring these bonds as contemplated by the statute, mandamus will lie. (38 C. J. 772, and cases there cited.)

Since the lower court denied relief to the relator, it did not pass on the amount of damages and costs allowed under section 9858, Revised Codes of 1935. No question is raised of the good faith of the town officials joined in this action as defendants. Therefore the costs and damages allowed under section 9858 should be assessed against the town of Ryegate as in that section provided. The determination of what the

counsel fees and damages by way of expense and costs should primarily be a matter for the trial court to pass upon.

The judgment is reversed and the cause remanded with direction to enter judgment for the relator, commanding the respondents to levy a tax in accordance with the statutes for the purpose of liquidating the bond debt of the city as evidenced by the water bonds here in question, and further, the court shall upon the record before it, or upon additional testimony if it chooses, determine and fix the amount of damages and costs as provided in section 9858. It is so ordered.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, MORRIS and ANDERSON concur.

Rehearing denied January 12, 1943.