STATE EX REL. TRUAX, ET AL., RESPONDENTS, *v.* TOWN OF
LIMA, ET AL., APPELLANTS.

No. 8785

Submitted January 28, 1948.   Decided March 4, 1948.

193 Pac. (2d) 1008.

Mr. John A. Collins and Mr. Leonard A. Schultz, both of Dillon, for appellants. Mr. Collins and Mr. Schultz argued the cause orally.

Mr. Earle N. Genzberger, of Butte, for respondents. Mr. Genzberger argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Relators as holders of special improvement district bonds issued by the town of Lima brought this proceeding in mandamus to compel the town and its officers and the county treasurer to pay the bonds or forthwith raise the funds by levying the necessary assessments for that purpose.

The court, after hearing, made an order in which it was recited that relators are the owners and holders of 26 bonds issued by the town of Lima whereby it promised to pay to the owners thereof $100 and interest thereon as set out therein on each bond. That none of the principal of the bonds held by relators has been paid though they have all matured and that some interest

is due on each bond. That the town of Lima has on hand a special improvement district fund and water fund. That the water fund was made up of sums credited to it from income from water rentals, all for the purpose of retiring bonds issued for money loaned to the town by the purchaser of the bonds; that there is sufficient in the two funds to redeem, retire and pay off all the bonds owned by relators and that it is the duty of respondents to pay off the bonds.

The order commanded the issuance of a writ of mandate commanding respondents to immediately retire and pay off the bonds with interest as specified in the bonds with the funds on hand in either or both of the funds referred to. This order was signed on June 9, 1947. On July 22, 1947, another order was made which recited that relators are entitled to damages as and for attorneys' fees in the sum of $400 and reiterated substantially the same matters as the order of June 9th excepting that respondents were ordered to make the payments within five days, and ordered the payment of the $400 as damages for attorneys' fees.

The appeal is from both orders.

The record discloses that there was created in the town of Lima a special improvement district on November 5, 1923. The resolution levying the assessment was approved January 21, 1924. It recited that the amount of indebtedness for making the improvements for which the district was created was $4,681.31. The resolution levied and assessed a tax upon the real estate in the district, each tract bearing the proportion of the tax that its area bore to the total area in the district. It recited that the indebtedness shall be paid in 20 equal annual assessments. The interest was fixed at 6% per annum.

The bonds matured 20 years after December 18, 1924, the date of their issue. Interest has been paid on all the bonds at their face value to December 24, 1942, amounting to $4,987.12 and 24 of the bonds issued have been paid off at their face value. The record shows that Charles Truax, father of relators, pur-

chased 50 of the 60 bonds issued for $90 each and that relators inherited the bonds in question here from their father's estate.

Each bond recites that it "is payable from the collection of the special tax or assessment which is a lien against the real estate within said improvement district," and is otherwise in the form provided by section 5249, Rev. Codes 1921, in effect when the bonds were issued.

Defendants have made several assignments of error the one most vital being that the court erred in ordering the bonds paid out of the water fund.

This assignment is meritorious.

This court has held that a judgment based upon improvement district bonds is not a general obligation of the town and is no part of the town indebtedness. State ex rel. Mueller v. Todd, 114 Mont. 35, 132 Pac. (2d) 154. The following cases in effect hold that special improvement district bonds are not a general obligation of the city or town: Griffin v. Opinion Publishing Co., 114 Mont. 502, 138 Pac. (2d) 580; Stanley v. Jeffries, 86 Mont. 114, 284 Pac. 134, 70 A. L. R. 166; State ex rel. Griffith v. City of Shelby, 107 Mont. 571, 87 Pac. (2d) 183; State ex rel. Clark v. Bailey, 99 Mont. 484, 44 Pac. (2d) 740.

Relators seek to avoid the effect of these decisions by the following facts. That for many years prior to the creation of the special improvement district the people of the town were furnished water by the railroad company. About the time of the creation of the district the town made an agreement with the railroad company whereby the company agreed to deliver the water to the town instead of to the individuals and the special improvement district was organized to distribute the water to the people in the district by means of new pipes which were laid to replace the old which had decayed. There was evidence that the town tapped the new pipe in two places and took water for the electric light plant and for a municipal skating rink. Water was also used by individuals outside the special improvement district and rental was paid to the town. Relator L. H. Truax testified that he overheard discussion be-

156

fore the city council in about the year 1936 regarding the creation of a water fund for the purpose of paying the bonds. This was done in response to the order of the state examiner that something be done about these bonds. There were no records of the town concerning this subject. The water fund was made up of water rentals from water users. The record shows that about one-half of the water users were outside the special improvement district. After the creation of the water fund two of the bonds were paid off out of the water fund.

This evidence does not warrant a finding that the bond holders have a right to compel the town to redeem the bonds from the water fund. Were there any merit to relator's contention that the town has the right to use the water fund for any municipal purpose it pleases, it does not follow that the town can be compelled to use it to pay special improvement district bonds.

Relators cite the case of George v. City of Asheville, 4 Cir., 80 F. (2d) 50, 103 A. L. R. 568, as sustaining the right to resort to the water fund to pay the bonds. That case involved a statute which required that the net income derived by a municipality from the operation of any revenue producing enterprise shall be applied on the interest and principal of bonds issued for such enterprise. Obviously under such a statute that was proper. But we have no such statute.

True, under our statute, subsection 64, section 5039, Rev. Codes 1921, and under section 6 of art. XIII of our Constitution, the obligation might have been incurred originally by the town but instead of proceeding so as to make the obligation a general one there was created a special improvement district under section 5226, Rev. Codes 1921, and the obligation was expressly confined and limited to the property within the district. The case of McClintock v. City of Great Falls, 53 Mont. 221, 163 Pac. 99, relied on by relators had to do with the proceedings under section 6 of art. XIII of the Constitution whereby the city as a whole and not a special improvement district undertook the project there under consideration. If we assume that the

proof was sufficient to show that the water fund was created to provide funds to pay off these bonds (though there were no written records of the town so showing) this would do no more than to recognize a moral obligation of the town to pay off the bonds and it would not give relators a legal right to compel resort to the water funds as a means of realizing their payment.

The record discloses that there is only $409.60 in the special improvement district fund. That amount may properly be applied in payment of principal and interest on the bonds and the court properly so held.

Other questions have been presented, and particularly as to whether it was proper to issue bonds to the extent of $6,000 par value on the resolution showing the need for $4,681.31 only and whether relators may recover the face value of the bonds when their father paid only $90 for each $100 bond and whether it is proper to allow interest on the face value of the bonds or only on a value of $90 each. But since the amount in the special improvement district fund added to what has already been paid on the bonds already redeemed will not amount to sufficient to represent payment of $90 per each bond and interest at 6% on a $90 valuation, those questions require no consideration at this time.

The order for the payment of attorneys' fees was undoubtedly predicated upon the view that relators won a complete victory. It was shown that there was in excess of $3,000 in the water fund when the action was commenced. Since relators cannot compel payment of the bonds out of the water fund and since therefore they recovered but little as a result of this action, the award of attorneys' fees in the sum of $400 cannot stand. It is not clear from the record before us whether any legal action was necessary to enable relators to have the proceeds from the special improvement district fund applied in payment of their bonds. If such action were necessary then the court may fix and allow a reasonable attorney's fee for that purpose, but since the amount of the fee is dependent to some extent upon the value of the services to relators (State

ex rel. Mueller v. Todd, Mont. 158 Pac (2d) 299), we think it is a safe assumption that the court would not have allowed the sum of $400 had the recovery been limited to the special improvement district fund only, but that the amount of the fee was substantially affected by the erroneous belief that relators had the right to resort to the water funds.

Appellants contend that the court had no authority to amend the order or judgment of June 9, 1947 by the order of July 22nd.

As above noted the only material difference between the two orders was that the latter included an award for damages for attorneys' fees which was not included in the order of June 9th.

The rule is that "judgments or records of trial courts may ▮ be modified or amended to remedy errors in certain respects, but only to make them express what was actually decided or to grant the relief originally intended, and not to set aside what has been determined nor to correct a judicial error or make a new adjudication." State ex rel. Vaughn v. District Court, 111 Mont. 552, 111 Pac. (2d) 810.

The order of July 22nd does not set aside what had been determined by the order of June 9th nor change the order of June 9th in any respect. Nor did it make a new or different adjudication. It simply determined a matter that had been submitted to the court originally and which was not passed upon in the order of June 9th.

The court did not err in making the amendment, but we ▮ think the better practice would be to make such amendments only upon motion and after notice.

The cause is remanded with directions to modify the orders appealed from by eliminating therefrom the direction that the bonds be paid out of the water fund and by modifying the award of attorneys' fees as to the court may seem proper. Each party shall pay its own costs on this appeal.

Mr. Chief Justice Adair and Associate Justices Choate, Gibson, and Metcalf, concur.

On Motion for Rehearing.

PER CURIAM.

Relators' petition for rehearing asserts that this court overlooked the fact that it is alleged in the petition for writ of mandate and admitted in the answer that the improvement district in question was created after authorization by the vote of the taxpayers affected. Elsewhere in the petition for writ of mandate it appears that the vote of the taxpayers affected was the vote of the taxpayers in the district. This authorization by the voters of the district did not have the effect of making the water system a city project as distinguished from a project of the special improvement district.

Relators overlook the vital fact distinguishing this case from that of First Nat. Bank of Glendive v. Dawson County, 74 Mont. 439, 240 Pac. 981; Edwards v. City of Helena, 58 Mont. 292, 191 Pac. 387; State ex rel. Mueller v. Todd, 114 Mont. 35, 132 Pac. (2d) 154; First Nat. Bank of Glendive v. Sorenson, 65 Mont. 1, 210 Pac. 900, which is that here we are dealing with a special improvement district project whereas in the cited cases the city as a whole undertook the project in question.

In relators' brief on motion for rehearing it is asserted: "What has caused the learned writer of the opinions in Hansen v. City of Havre, 112 Mont. 207, 114 Pac. (2d) 1053 [135 A. L. R. 1278], and in Edmunds v. City of Glasgow, 89 Mont, 596, 300 Pac. 203 [86 A. L. R. 1052], and Clerihew v. [City of] Baker, 109 Mont. 317, 96 Pac. (2d) 269, to change the doctrine of those cases between their respective dates and the writing of the opinion in the current case? He has neglected to point out the distinction."

The Hansen case involved proposed special improvement district bonds. But we fail to see where anything said in the opinion in that case in any way conflicts with the holding here. The principal contention in that case centered around the revolving fund authorized by section 5277.1 et seq., Revised Codes of Montana 1935, it being the contention that the bond issue would create a debt beyond the constitutional limit.

It was pointed out that sections 5277.1 et seq. did not make the revolving fund chargeable with the payment of the bonds

but that those funds are loaned to the district fund and the revolving fund has a lien as security.

The court in the Hansen case as in this case pointed out that "the proposed bonds are not obligations of the city, but of the special improvement district only, and payable only from the district fund." In that case a revolving fund was established pursuant to section 5277.1. Here none was established nor could it be in view of the holding in Stanley v. Jeffries, 86 Mont. 114, 284 Pac. 134, 70 A. L. R. 166.

The case of Edmunds v. City of Glasgow, supra, is inapplicable here. There the city and not a special improvement district was procuring the water plant. The court held that the municipality may be estopped from disputing recitals in the bonds as against bona fide holders of the bonds. No one is here questioning the validity of the bonds at least to the extent of $4,681.31. And no one is relying upon any infirmity contrary to the recitals in the bonds. They specifically recite that they are "payable from the collection of the special tax or assessment which is a lien against the real estate within said improvement district" and that they are "redeemable at the option of the town at any time there are funds to the credit of said improvement district fund for the redemption thereof." True the bonds also recite and certify, "that all things required to be done, precedent to the issuance of this warrant, have been properly done, happened, and been performed, in the manner prescribed by the laws of the State of Montana and the resolution and ordinances of the town of Lima, Montana, relating to the issuance thereof." But as above stated there is no attack here on the validity of the bonds up to the sum of $4,681.31 and whether they are valid beyond that amount is unimportant until such time as revenue is discovered that may be applied in their payment.

The third case relied on by relators in the above statement, that of Clerihew v. City of Baker, was one involving city bonds and the only holding that might have any remote application here is that the city is estopped as against bona fide holders from questioning the validity of the indebtedness for which the bonds

were issued by recitals in the bonds. As above noted there is no attack made upon the indebtedness here up to the sum of $4,681.31.

The next point urged by relators is that this court overlooked the applicability of section 5252, Revised Codes of 1935, and that we should decide the point as to whether further assessments may be ordered to pay the bonds.

Section 5252 provides: ''Whenever, by reason of any alleged non-conformity to any law or ordinance, or by reason of any omission or irregularity, any special tax or assessment is either invalid or its validity is questioned, the council may make all necessary orders and ordinances, and may take all necessary steps to correct the same and to reassess and relevy the same, including the ordering of work, with the same force and effect as if made at the time provided by law, ordinance, or resolution relating thereto; and may reassess and relevy the same with the same force and effect as an original levy; whenever any apportionment or assessment is made, and any property is assessed too little or too much, the same may be corrected and reassessed for such additional amount as may be proper, or the assessment may be reduced even to the extent of refunding the tax collected. Any special tax upon reassessment or relevy shall, so far as is practicable, be levied and collected as the same would have been if the first levy had been enforced; and any provisions of any law or ordinance specifying a time when, or order in which acts shall be done in a proceeding which may result in a special tax, shall be taken to be subject to the qualifications of this act. Any and every ordinance, or part thereof, of any council, heretofore passed in substantial conformity with this section, is hereby legalized.''

This section does not authorize reassessments to make up for delinquent assessments. School Dist. No. 1, Lewis and Clark County v. City of Helena, 87 Mont. 300, 287 Pac. 164; Deming v. Board of Supervisors, 237 Iowa 11, 21 N. W. (2d) 19, 162 A. L. R. 391; Municipal Investors Ass'n v. City of Birmingham, 316 U. S. 153, 62 S. Ct. 975, 86 L. Ed. 1341. The

162

question here is, may this section be resorted to where, as here, the original assessment was made to pay off $4,681.31 as recited in the resolution levying the tax and as shown by the evidence, whereas bonds in the principal sum of $5,000 were issued to relators' predecessor in interest?

It seems to us that if ever the assessment actually made could have been questioned, it is too late to do so now.

Relators' father, to whom the bonds were originally issued, was chargeable with knowledge of the circumstances as shown by the record relating to the assessment as made. He at one time was mayor of the town. Had he deemed the assessment insufficient, steps should have been taken long ago to have the assessment changed.

Relators did not buy the bonds but inherited them from their father. They acquired no greater interest than their father had.

It is our view that relators' father was guilty of laches or would now be estopped from contending for an additional assessment, and that relators cannot do so at this late date even though we assume without so deciding that it would have been proper so to do, had seasonable application been made.

The motion for rehearing is denied.

Mr. Chief Justice Adair and Associate Justices Choate, Gibson, Angstman and Metcalf concur.

Rehearing denied June 5, 1948.